[No. 7,586.—Department Two.]

## HUNGARIAN HILL GRAVEL MINING CO. *v.* THOMAS S. MOSES ET AL.

WATER RIGHT—MORTGAGE—IMPROVEMENTS OF MORTGAGED PREMISES—APPURTENANCES.—G., being the owner of certain mining claims known as the "Kelly & Co. Claims," and of certain ditches and water rights appurtenant, mortgaged the same to the defendants. At the date of the mortgage, G. owned a ditch known as the "Kelly Ditch," by which the waters of Gansner Creek were conducted to his land, but he afterwards constructed a new ditch on a higher level, and also a reservoir on his claim, to be used in connection therewith, and abandoned the old ditch and suffered it to fall out of repair. Afterwards he conveyed to the plaintiff his claims—with an adjoining one that he had purchased—together with the new ditch and all water rights appurtenant; the deed providing that the conveyance was made subject to the mortgage of G. to the defendants. The defendants subsequently purchased the mortgaged premises at the foreclosure sale in an action brought against G. and the plaintiff to foreclose the mortgage. In an action by the plaintiff to quiet its title to the new ditch and reservoir, and the water rights used and connected with the same.

*Held:* The construction of the new ditch and reservoir was for the purpose of employing to better advantage the use of the water rights covered by the mortgage, and they passed by the foreclosure sale to the defendant.

ACTION TO QUIET TITLE—ANSWER—PLEADING—JUDGMENT.—In an action to quiet title, where the answer consists of denials of the plaintiff's allegations, and contains none of the elements of a cross-complaint, as distinguished from a defense to the plaintiff's action, and contains no prayer for affirmative relief, it is error for the decree to award affirmative relief.

APPEAL from a judgment for the defendants in the Superior Court of Plumas County. HUNDLEY, J.

The answer contains a series of denials of various allegations in the complaint, and then proceeds as follows:

"Defendants deny that their claim to and estate in the said property is void or without right; but on the contrary, they allege that defendants are the owners of, and in possession of, and entitled to the possession, use, and enjoyment of all the real estate described in plaintiff's complaint, and every part and parcel thereof. Wherefore, defendants pray that plaintiff take nothing by its action herein, and that they go hence unharmed, with their costs."

The following are the findings of fact in the court below:

1. That on the 27th day of April, 1872, and for a long time prior thereto, the defendants were in the possession of a set of mining claims situate on Hungarian Hill, Plumas Township, Plumas County, State of California, consisting of one hundred and thirteen and one tenth acres, known as the Kelly & Co. Claims, and were engaged in working the same by hydraulic pressure.

2. That to work said claims the defendants owned and used a ditch conveying all of the waters of Gansner Creek and intermediate streams, except for a few days at times of high freshets, to said claims, called the Old Kelly Ditch; also a small ditch conveying the waters of the Harthey Fork of Slate Creek to said claims, called the Slate Creek Ditch.

That the Kelly Ditch delivered the waters of Gansner Creek into a small reservoir situated upon said claims, and that the Slate Creek Ditch had no reservoir connected with it, and that neither of said ditches was high enough to enable the defendants to work all portions of said claims from said ditches or from said reservoirs.

3. That by means of said Kelly Ditch the defendants then possessed and used, and for a long time prior to said date, to wit, since the year 1859, had possessed and used all of the waters of said Gansner Creek, and the streams intermediate said creek and said claims, in so mining thereon.

4. That on the 28th day of April, 1872, the defendants conveyed all of said claims, ditches, and water rights to one J. D. Goodwin.

5. That on the 28th day of June, 1872, said Goodwin conveyed all of said property to one Clinton Gurnee, and said Gurnee at the same time executed to these defendants a mortgage, by which he did grant, bargain, sell, and convey to the defendants all of said property, to secure the sum of ten thousand dollars thereafter to become due from the said Gurnee to these defendants.

6. That on the said 28th day of June, 1872, Gurnee posted notices on the several branches of Mill Creek, a stream beyond Gansner Creek, and some three miles further from said claim than the last named creek, claiming a large amount of the waters of said Mill Creek for his mining purposes.

7. That upon the conveyance to Gurnee of said claims, ditches, and water rights, he entered into the possession of the same, and immediately located a line of ditch, commencing at the lower end on a ridge making down between the head of the Slate Creek Ditch and the old Kelly Ditch, and from sixty to one hundred feet higher than said ditches, and h gh enough to cover all portions of said mining claims, and running along in the direction of Gansner Creek, at a less grade than the old Kelly Ditch, until it intersected and crossed the latter some half mile below its head.

Continuing the location of the new line of ditch to Quincy Ravine, and to the west branch of said Mill Creek.

8. That at the time of locating this new line of ditch Gurnee located three new reservoir sites, one at the head of the Slate Creek Ditch, so that the water from the new ditch might be dropped into it, called Reservoir No. 4; one on the line of the Slate Creek Ditch called No. 1; and one some twenty-five feet below the lower end of the line of ditch so located, and between that and the old reservoir, called No. 3, and claimed by the plaintiff in its complaint, and he immediately com-

menced the construction of all of these reservoirs, and also to enlarge the old reservoir, which he called Reservoir No. 2.

He caused to be constructed a ditch leading from Reservoir No. 3 to a point near Reservoir No. 2, and some twenty-five feet above the same, so that all the water from No. 3 could be discharged into No. 2.

9. That at the time Gurnee took possession of the property the Slate Creek Ditch consisted mainly of a small flume, some sixteen inches in width, which he immediately removed, and constructed a ditch on the line of said flume from Reservoir No. 4 to Reservoir No. 1 of sufficient size to convey seven hundred and fifty inches of water; and also a ditch from Reservoir No. 1, of the same capacity, to a point on said claims just below Reservoir No. 2; and also constructed a ditch from the latter reservoir into the Slate Creek Ditch, and from said junction the Slate Creek Ditch was extended to a point nearly opposite the lower end of that portion of the mining claims situated on what is called the Quigley Channel, and from said junction to this lower end of the Slate Creek Ditch it had a capacity of some one thousand seven hundred inches.

10. That he commenced and during that fall completed the ditch newly located by him to Quincy Ravine, some half mile beyond Gansner Creek, and of a capacity of one thousand seven hundred inches, and before the first of November of that year turned all of the waters of said Gansner Creek, and of all other streams on the line thereof between said creek and the mining claims, into the new ditch thus constructed, and that the three new reservoirs, the enlargement of the old one, and the ditches for the distribution of the waters upon said claims, were completed at the time of or before the completion of the above new ditch to the Quincy Ravine.

11. That immediately after taking possession of said mining claims, Gurnee purchased a large lot of twenty-two and twenty-one inch iron pipe, caused the same to be placed on said mining claims in two lines, one connected by means of a bulkhead with the end of the ditch leading the water from Reservoir No. 3 to the point above Reservoir · No. 2, and at an elevation above the latter reservoir, and leading thence on to that portion of said claims known as and called the Arkansas Tract; and the

other line connected by means of a bulkhead with the lower end of the Slate Creek Ditch, and leading thence to the lower end of that portion of said claims known as the Safe or Kelly Tract, on the Quigley Channel; and that these lines of pipe were so placed for the purpose of working said mining claims, and were completed in the fall of 1872.

12. That in April, 1873, Gurnee constructed the ditch from the Quincy Ravine to the west branch of Mill Creek, with a capacity of seven hundred and fifty inches, and succeeded in getting about one hundred inches of water through from said Mill Creek to Gansner's Creek, for three or four weeks, when the farmers compelled him to turn the water of Mill Creek down the stream. The Quincy Ravine furnished no water for the use of said ditch, and no greater amount than the one hundred inches of water has been obtained by reason of the extension of the ditch beyond Gansner's Creek.

13. That from the time of the construction of the new ditch the old Kelly Ditch has been unused, and has become so much out of repair that it would require some two thousand dollars to fit it for conveying the Gansner Creek water to the mining claims.

14. That by means of the new ditches, the said reservoirs, and the two lines of pipes, Gurnee used all of said waters upon these mining claims until in 1874, when he sold and conveyed all of said property to the plaintiff.

15. That at the time Gurnee located the said Mill Creek and Quincy Ravine water privileges, bought and placed said iron pipe, constructed said main ditch to Quincy Ravine, and enlarged and built said reservoirs and the ditches connected therewith, he owned no other mining claims than those purchased of defendants as aforesaid, but on the 21st of November, 1872, he purchased a claim on the said Quigley Channel below and adjoining which portion of his said claims called the Safe or Kelly Tract, that portion so purchased is known as the Hersey Claim.

16. That the deed from Gurnee conveying the above-described water ditches, reservoirs, water rights, and mining claims to plaintiff, after particularly describing each and all of said lots of property, provides that the whole thereof is conveyed subject to the mortgage which Gurnee executed to these defendants as aforesaid, and that plaintiff should fully

discharge and pay the same, and hold Gurnee entirely free and harmless on account thereof.

17. That in the winter of 1874–5, the plaintiff having worked that portion of the original Kelly & Co. Claims, called the Arkansas Tract, as far as the tunnel outlet therefrom would permit, moved the line of large pipe situate thereon, as aforesaid, to the lower end of said Hersey Claim, with the view of working up said channel to the Kelly & Co. Claims, thereby enabling it to work said claims to better advantage, and in 1875 and 1876 did so work upon the said Hersey claim in the direction of the original Claims, leaving the other line of pipe in position, as aforesaid, to be used in working the Kelly & Co. Claims as soon as that point should be reached.

18. That for the purpose of so working the Hersey Claim, the plaintiff concentrated the said waters of Mill and Gansner creeks in said reservoirs, and by means of the Slate Creek Ditch from the point where it connects with the ditch from Reservoir No. 2 conveyed said water to the lower end of said ditch, then dropped it into a ravine called Pipe Ravine, from which it was taken by means of ditch to the Hersey Claim.

19. That no use was made of said ditches and water rights in 1877, and the plaintiff never has used the said Mill Creek Ditch, nor the said Reservoir No. 3, at any point or in any manner than through the other reservoirs and the Slate Creek Ditch, as aforesaid.

20. That on the 5th day of February, 1877, defendants commenced an action in the District Court in and for said Plumas County against said Gurnee and the plaintiff, to foreclose said mortgage. That the plaintiff was duly served with summons therein, and made default, and on the 13th day of April, 1878, these defendants obtained a decree of said Court foreclosing said mortgage, and directing the sale of the said Kelly & Co. Mining Claims, and all water ditches conveying water thereon, including the Slate Creek Ditch, with all the water, water rights and privileges belonging to the said water ditches, and each of them, and all reservoirs used, had, and belonging to said mining claims, and every part and portion thereof, to satisfy the sum due on said mortgage, amounting to twelve thousand nine hundred

and eighteen dollars, besides costs; and that said property was duly sold by the Sheriff of Plumas County, at public auction, on the 19th day of September, 1878, to these defendants, for sufficient to satisfy the said decree. That no redemption of said property was made, and on the 27th day of March, 1879, the said Sheriff executed to the defendants his deed conveying all of said last described property to them, and immediately thereafter these defendants entered into the possession of the whole of said property, including the Mill Creek Ditch and Reservoir No. 3, and of all water rights pertaining thereto, and have continuously held, used, and enjoyed the same, without objection, until the commencement of this action.

And as conclusions of law from the foregoing facts, it is considered that the defendants are the owners of and entitled to the property described in the plaintiff's complaint, and known as and called the Mill Creek Ditch, together with "Reservoir No. 3," situated on the line thereof, and all water rights connected therewith and appurtenant thereto.

The annexed is a copy of the map referred to in the findings.

*R. H. Variel, W. W. Kellogg,* and *Creed Haymond,* for Appellant.

*J. D. Goodwin,* for Respondents.

Myrick, J.:

1. This case comes to us on appeal from the judgment rendered in favor of defendants against the plaintiff. A bill of exceptions appears in the transcript. The case was tried by the Court, and the findings were filed and judgment entered August 17th, 1880; the plaintiff served and filed a notice of appeal August 25th, 1880, and filed an undertaking on appeal August 27th, 1880. No order was made extending the time for preparing a draft of bill of exceptions. On the 14th of September, 1880, plaintiff's proposed bill of exceptions was served on defendant's attorney; November 10th, 1880, defendant's attorney admitted service of an amended bill of exceptions; November 12th, 1880, the Judge settled

and certified the bill, and on the 15th of December the clerk certified the transcript. When the proposed bill and the amended bill were served, no objection was made that they were not, respectively, in time.

Objection is made by the respondents, that the bill was not in time, and should be disregarded, and the case considered only on the judgment roll.

2. The bill of exceptions is a statement of the evidence in the case, and contains but one note of exception, and that is to the admitting in evidence of a certificate of sale and the Sheriff's deed. No error appears in the ruling of the Court admitting them in evidence. At the foot of the bill of exceptions are eighteen assignments of error, all relating to the findings—some specifying certain findings as not supported by the evidence, others specifying findings as contrary to the evidence, others stating that the findings embrace matters not in issue, and others that some of the issues are not covered by the findings.

Objection is made, that all the matters above referred to, except the exception noted, are matters to be considered only on motion for new trial, and appeal from the ruling thereon, and should be thus brought here by statement, and not by bill of exceptions; that insufficiency of the evidence to sustain the decision, and other defects in the findings, not especially excepted to at the time, can not be the subject of a bill of exceptions, under §§ 646 and 657, Code of Civil Procedure.

3. We have examined the case as presented by the pleadings and findings and by the bill of exceptions, and see no error other than that hereinafter noted. The evidence is consistent with the theory that plaintiff, in constructing the Gurnee Mill Creek Ditch and the reservoirs connected therewith, and in using the same for conveying water, did not acquire any water rights other than those embraced in the mortgage, by the foreclosure of which the defendants acquired their title; that the construction of said ditch was for the purpose of employing to better advantage the use of the water rights covered by the mortgage; and the findings are based upon that theory. Either that theory is correct, or the transaction was an attempt to divert the waters from the ditch covered by the mortgage and leave the ditch without

water or a water right. We think the more innocent intention was the controlling motive, especially as the deed under which plaintiff claims any title contains the statement that the "property is conveyed subject to a certain mortgage thereon," describing the mortgage referred to, and "that the party of the second part (plaintiff here) is to fully pay and discharge the balance remaining due on said mortgage, and hold the parties of the first part (including, with others, the mortgagor) and each of them entirely free and harmless on account thereof."

The error to which we refer appears from the pleadings and judgment, and is this: The action is brought to quiet title, and the complaint contains various allegations relating to the title and the claims of title of the parties, and prays that defendants may be enjoined from asserting any claim or right to the property claimed by plaintiff. The answer contains specific denials of plaintiff's allegations of title, and alleges that defendants are the owners of the property in dispute; and prays that plaintiff take nothing by its action herein, and that defendants go hence unharmed, with their costs. The Court, after judgment that plaintiff was not the owner of the property, and that defendants were the owners, decreed that the plaintiff's claims to the property were groundless, and that the defendants were the true and lawful owners of the water ditches, reservoirs, and water rights described in the complaint, "and that said defendants' title thereto is adjudged to be quieted against all claims, demands, and pretensions of the said Hungarian Hill Gravel Mining Company, a corporation, plaintiff, which said corporation, plaintiff, is hereby estopped perpetually from setting up any claims thereto, or any part thereof."

The answer of the defendants contained none of the elements of a cross-complaint, as distinguished from a defense to plaintiff's action, and contained no prayer for affirmative relief. That part of the decree awarding affirmative relief should be stricken out.

It is not necessary for us, therefore, to pass upon the first and second points above suggested, because, even granting that the bill of exceptions is properly here, and is as efficacious in presenting the case as would have been a formal

statement on motion for new trial, the appellant would not be entitled to the relief sought by its appeal.

The cause is remanded to the Court below, with instructions to strike out of the decree the affirmative relief, being the clause above marked with quotations, and in all other respects the judgment is affirmed.

SHARPSTEIN, J., THORNTON, J., and MORRISON, C. J., concurred.