SUSAN BAKER *vs.* BELDEN BESSEY, and another.

Kennebec.    Opinion May 29, 1882.

*Pleadings.   Real action.   Deed.   "Mill and dam, with the appurtenances."*
*Misnomer  in civil actions.*

A declaration in a writ of entry is not defective because it alleges the demand-ant's ownership in the demanded premises to. be a fee, instead of a fee-simple; nor because the premises are described, without metes and bounds, as "the mill and mill-dam, with the appurtenances, and the land under and adjoining them and used therewith," a general description of the locality of the prem-ises being added.

The same description, being the language of the statute, is sufficient in a deed from an officer who sold the premises under a lien obtained thereon by a judgment in a complaint for flowage.

There are two dams across a stream running from a pond, upon which stream a mill is situated, one at the mill, the other half a mile above the mill, and within a mile of the outlet of the pond.   The lower dam flows to the upper. The upper is a reservoir dam used to preserve a head of water for the mill below.   The same person owned the mill and both dams, but not all the land upon the stream between the dams, using them for many years in conjunction with each other.   *Held,* that an officer's deed of the mill property describing it as "the mill and dam, with the appurtenances," carries, by express terms, the mill-dam below, and, by implication, an easement in the dam above.   The conveyance gives the grantee a right to use the upper dam to maintain a head of water for the mill below.

Where the defendant was sued as Belden Bessey, while his true name is Jono-than Belden Bessey, the objection therefor should be by plea in abatement. Nor does an objection lie to a sale of defendant's property upon a judgment against him in which he was sued as Belden Bessey, he having appeared and contested the suit under that name.

ON REPORT.

Writ of entry to recover possession of certain real property situated in Albion and described in the declaration.

Writ dated April 26, 1880.

(Declaration.)

"In a plea of land, wherein the plaintiff demands against the defendants a lot of land situated in said Albion in said county, and bounded and described as follows : The mill and mill-dam, with the appurtenances, and the land under and adjoining them,

and used therewith, situated on and across the stream that constitutes the outlet of the Lovejoy pond, so called, in Albion, and formerly owned by said Belden Bessey and now occupied by the defendants; whereof the demandant was seized in fee within twenty years last past, and the defendants within said time unjustly and without judgment of law, disseized the demandant and still unjustly withhold said premises from her.

"And the demandant further avers that the defendants have been in possession of said premises since the first day of June, 1878, receiving the rents and profits thereof during all that time, which the demandant avers are reasonably worth one hundred and fifty dollars a year, amounting to two hundred and eighty-eight dollars in all, which she claims to recover in this action."

Plea, *nul disseizin,* and brief statement averring the title to be in the defendants and not in the plaintiff.

Other material facts are stated in the opinion.

By the terms of the report "the court to enter judgment upon so much of the evidence as is legally admissible, and if the plaintiff is entitled to recover, the damages for the rents and profits are to be one hundred and forty dollars with interest from the date of the writ."

*Joseph Baker,* for the plaintiff, cited: R. S., c. 92, § § 11, 15; *Lowell* v. *Shaw,* 15 Maine, 242; *Knapp* v. *Clark,* 30 Maine, 244; *Pierce* v. *Knapp,* 34 Maine, 402; *Leonard* v. *White,* 7 Mass. 6; *Blake* v. *Clark,* 6 Maine, 436; *Blains* v. *Chambers,* 1 S. and R. 169; *Pickering* v. *Stapler,* 5 S. and R. 107; Angell on Watercourses, § 153, *a;* *Maddox* v. *Goddard,* 15 Maine, 218; *Rackley* v. *Sprague,* 17 Maine, 281; *Stackpole* v. *Curtis,* 32 Maine 383; *Perrin* v. *Garfield,* 37 Vt. 312; Washburn on Easements, § 45, 34; *Crockett* v. *Millett,* 65 Maine, 191; *Whitney* v. *Gilman,* 33 Maine, 273; *Walcott Co.* v. *Upham,* 5 Pick. 292; *Shaw* v. *Wells,* 5 Cush. 537; *Bates* v. *W. Iron Co.* 8 Cush. 548.

*Edmund F. Webb,* for the defendants.

The writ is not in the form prescribed by law. R. S., c. 104, § 3. "He (the demandant) shall set forth the estate he claims in

the premises, whether in fee simple, fee tail, for life, or for years," &c.

The demandant's writ sets forth only a naked fee, which may be fee-simple, fee-tail, for life, for years, a determinable fee, a qualified fee or conditional fee, and is not such a writ as defendant is entitled to. *Veazie* v. *China*, 50 Maine, 526 ; *Low* v. *Dunham*, 61 Maine, 566 ; *Blake* v. *Portsmouth and Concord Railroad*, 39 N. H. 435, and cases there cited. *Wyman* v. *Brown*, 50 Maine, 143 ; 1 Wash. on Real Prop. c. 3, § § 31, 32 ; 2 Bl. Com. 106.

Demandant's lien attachment and levy are void.

The process undertakes to divest the defendant of the title to his property without his consent, and there must be a strict compliance with the law.

The word appurtenant does not carry the upper dam.

The word will not pass any corporeal real property, but only incorporeal easements or rights and privileges. Bouvier's Law Dictionary:

By grant of a grist mill, with the appurtenances, the soil of a way, immemorially used for the purpose of access to the mill from the highway does not pass. *Leonard* v. *White*, 7 Mass. 6. "Land cannot be appurtenant to land," *Ibid.* 9.

In *Bryan* v. *Weatherhead*, 3 Crokes, Rep. 17, it is held that "the grant of a house with the appurtenances will not pass an adjoining building not accounted parcel of the house, although held with it for thirty years, it must be an accepted parcel thereof "*ex vi termini.*"

And in *Hearn* v. *Allen*, *Ibid.* 57, it is held that a devise of a house with the appurtenances will not pass land at a distance, though occupied with the house.

After the four deeds to the defendant, there was a unity of seizin of all the estates, both upper and lower dams, in the defendant, and all rights as easements, were extinguished.

The right of flowage is like the right of way which one may have through the close of another which is appurtenant to his

land, and grant of his land with the appurtenances will pass the right of way. But a man cannot have a right of way through his own land, independent of his right to the land; he has the right of way, but it is not an easement. *Barker* v. *Clark*, 4 N. H. 382; *Grant* v. *Chase*, 17 Mass. 447.

In this case the defendant owned the upper dam, the soil, the yard, the banks and the right to flow, but his right was not an easement; he had the title to the soil, and there was no easement to pass with the lower dam under the head of flowage as it would be if the upper dam had annexed to it the right to flow land of other people.

"Nothing is more clear than that under the word appurtenance according to its legal sense, an easement which has become extinct, or which does not exist in point of law by reason of ownership, does not pass." 2 Wash. Real Prop. 627; *Plant* v. *James*, 27 E. C. L. R. 191.

There is no easement of flowage in the upper dam, for the defendant owns it *ex vi termini*; he owns the soil which includes the use of flowing.

"By the grant of a mill, the land under the mill and adjacent thereto so far as necessary to its use, and commonly used with it, will pass by implication." *Forbush* v. *Lombard*, 13 Met. 114; *Blake* v. *Clark*, 6 Maine, 436.

But the land thus passing must be adjacent and not at a distance. *Blake* v. *Clark*, 6 Maine, 439, 440; *Tyler et al.* v. *Hammond*, 11 Pick. 193.

The attachment and levy in the name of Belden Bessey were void. The title deeds were in his real name, J. B. Bessey, or Jonathan B. Bessey.

R. S., c. 81, § 56, requires the officer returning the attachment to return "the names of the parties" to the registry of deeds. See *Dutton* v. *Simmons*, 65 Maine, 583, where the officer returned attachment of real estate of Henry "M" Hawkins instead of Henry "F" Hawkins and where this class of cases are collected and discussed by the court.

The defendant could not plead in abatement in this action, because he would necessarily tender more than one issue of fact.

Any plea in abatement which tenders an issue upon more than one matter of fact is bad. *State* v. *Heselton,* 67 Maine, 598; *Wyman* v. *Brown,* 50 Maine, 139; *Bailey* v. *Smith,* 12 Maine, 196; *Tibbetts* v. *Shaw,* 19 Maine, 204; *Maine Bank* v. *Hervey,* 21 Maine, 38.

In 1831, the legislature passed an act to abolish special pleading. C. 514. "In all civil actions the defendant shall plead the general issue." In 1836 special pleading was abolished in Massachusetts, and after that a tenant could show *non tenure* under the general issue of *nul disseizin.* *Wheelwright* v. *Freeman,* 12 Met. 154; *Richards* v. *Randall,* 4 Gray, 53.

PETERS, J. The demandant, under a complaint for flowage, recovered a judgment for damages against one of the present defendants; sued the same in assumpsit in order to obtain a lien-judgment against the defendants' mill-dam and mill; recovering in that suit; purchased the property in her name at a sale by the officer upon an execution issued on the latter judgment; and institutes this action to recover possession of the property thus purchased. The proceedings in thus obtaining title seem to have been in proper form and in accordance with the statutory requirements.

It is contended that the present writ is wrong in not alleging the demandant's ownership to be a fee-simple; it alleges a fee. That point fails, by force of a previous decision of the question in the case of *Jordan* v. *Record,* 70 Maine, 529.

The description of the demanded premises in all of the writs and papers, including the deed from the officer, is this: "The mill and dam, with the appurtenances, and the land under and adjoining them, and used therewith, situated on and across the stream that constitutes the outlet of the Lovejoy pond, and formerly owned by BeldenBessey and now occupied by the defendants." It is argued, by the defendants, that this is not a good description because not giving metes and bounds. We think that, in this particular proceeding, such a general description is well enough, though such might not be the case in officers' proceedings usually. It is the language of the statute. It may in this case be a safer description to abide by than any other, for both parties.

The defendants contend, further, that the description does not embrace the dam which caused the original injury by flowing, and that for that reason the proceedings are erroneous. It appears that there are two dams across the stream, one at the mill, and the other about half a mile above the mill, and within a mile from the pond; that the lower dam flows only up to the upper dam; that the upper dam holds back the principal head of water used at the mill; and caused the flowage which the demandants complained of; that the same person was the owner of the mill and both dams, and that for many years the dams have been used in conjunction with each other; and it may be inferred, we think, from the evidence, that either structure would be of very little value or consequence without the other.

The question, upon these facts, is, whether an easement in the upper dam is included in the describing words, "mill and dams, with the appurtenances," as used in the sheriff's conveyance and the other papers. We think it is contained therein, not in express terms, but by the strongest implication. It is an incident to the land granted.

The question is governed by the ancient maxim or rule of law, that when a person grants a thing, he is supposed also tactily to grant such means of his own as are necessary to thereby attain the thing granted; that, when the principal thing is granted, the incident passes with it. Broom Max. *362; Shep. Touch. 89. Incidents attached to land granted pass to the grantee, without any special terms in the conveyance, when necessary for its use and enjoyment. This principle is especially applicable to water privileges in grants of mills dependent for their use and value upon a water-power.

The general principle has various practical applications. A deed of a wharf may, by implication, include the use of adjoining flats; of a house, may convey the right of access thereto; of standing timber, grants the necessary facilities for cutting and removing it; of a mine, the opportunities to excavate for it; of a "farm" or "messuage" or "manor," known by any certain name, may include sundry distinct tenements and easements which are necessarily incident to the principal thing described as

granted. A "barn," when conveyed or reserved *eo nomine*, may include a shed connected with it, and other privileges. *Cunningham* v. *Webb*, 69 Maine, 92. Under a description of a "rope-walk" in a deed, such land of the grantor may pass as is habitually and necessarily used for its business. *Davis* v. *Handy*, 37 N. H. 65. An interesting and novel illustration of the principle is seen in the case of *Hougan* v. *Railroad*, 35 Iowa, 558, where it was held that a railroad company, having by grant a right of way for the use and occupation of its railway, had the legal right to dig a well upon such right of way and to use the water supplied by percolation for railroad purposes, although it materially diminished the supply of water in a spring upon the grantor's land. It has been frequently held that the principle applies to a grant of land with water running to, buildings upon it, the grantor having a permanent ownership in the estate and in the waters. *Coolidge* v. *Hager*, 43 Vt. 9.

The maxim or principle is general in its character, and for that reason different courts have been led to different conclusions in many instances, and nice distinctions have arisen in cases. Differences might arise even in respect to some of the cases which we have cited for the purpose of argument and illustration. But in construing conveyances of mills and mill privileges, the course of decision has been uniformly liberal towards the grant. It was laid down by the old writers in general terms, that, "by the grant of mills, the waters, flood-gates, and the like, that are of necessary use to the mills, do pass." The same doctrine was at an early day accepted in this State. In *Blake* v. *Clark*, 6 Maine, 436, it was held that the word "mill" in a conveyance would carry the land under the mill, and might embrace the free use of the head of water existing at the time of the conveyance, as also a right of way and any other easement which has been used with the mill and which is necessary to its enjoyment. This principle has been acted upon in quite a number of subsequent cases. *Hathorn* v. *Stinson*, 10 Maine, 224; *Maddox* v. *Goddard*, 15 Maine, 218; *Rackley* v. *Sprague*, 17 Maine, 281; *Crosby* v. *Bradbury*, 20 Maine, 61; *Stackpole* v. *Curtis*, 32 Maine, 383. SHAW, C. J., defines the principle in *Richardson*

v. *Bigelow,* 15 Gray, 154, as far as applicable to the water-power embraced in such a description. "It is a well settled rule of law," says he, "that the grant of a mill carries with it, by necessary implication, the right to the use of the water-course coming to the mill and furnishing power for working it, and also to the canal or raceway which carries the water from the mill, to the full extent of the grantor's right and power so to grant them."

There are cases which hold that the rule would not apply where a mill-site is described by metes and bounds, without any allusion in the deed to any mill or water right or privilege, and there is nothing therein to indicate an intention to include any privileges connected with the main subject of the grant. *Brace* v. *Yale,* 4 Allen, 393; *Tabor* v. *Bradley,* 18 N. Y. 109; *Voorhees* v. *Burchard,* 55 N. Y. 98; *Simmons* v. *Cloonan,* 81 N. Y. 557.

The objection raised, that land does not pass as appurtenant to land, does not apply in this case. The land is not claimed in the upper dam, but only the use of the land, an easement in it. Nor does the objection, pressed upon our attention, lie, that there was no easement to pass by the grant for the reason that the grantor had more than an easement, having a full fee. The question is not whether an existing easement passed by the terms of the grant, but whether a new one was not thereby created; whether the proceedings do not carve one out of the defendants' estate; in other words, whether an easement in the dam above is not, in a legal sense, a part and parcel of the privilege below. A mere mill-structure was not the thing granted, but a mill; which implies a water power; and a privilege in the upper dam is an essential part of that power. The two are but one thing. The two combined are amenable for damages under the flowage act. *Goodwin* v. *Gibbs,* 70 Maine, 243.

The fact that a half mile's distance intervenes between the two dams does not defeat an application of the principle. They are connected by a natural stream. All easements are out of land other than the principal land granted. It is the use of the water-course that constitutes the privilege, which may necessarily

be for a longer or shorter distance, according to circumstances. It may require a control of the water far above or below the mill. *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190. Distance is but one of the elements to be taken into the account. This is outweighed by relatively more important considerations. " It has often been held that a conveyance by metes and bounds, of a mill site," says FOLGER, J., in *Voorhees* v. *Burchard, supra*, " carries the right to take and convey and discharge water, from and across lands not within the boundaries given by the deed, for the reason that the power so to do is necessary to the full enjoyment of the property specifically conveyed." The case of *Perrin* v. *Garfield*, 37 Vt. 312, presents a statement of facts almost identical with those in the case at bar, where the court decided that such an easement passed. PECK, J., in discussing the question, says : "It is said this dam or easement is too far distant to pass by a conveyance of the mill. The proximity of the one to the other is of little comparative importance in determining the question whether an easement passes by a conveyance of the dominant tenement. It depends rather upon the nature, character and purpose of the easement, its relation to the subject matter of the grant, its accustomed use in connection with it, and its necessity to the value, and to the beneficial and convenient use of the premises granted."

It seems that one of the defendants has been in all the proceedings called Belden Bessey, while his true name is Jonathan Belden Bessey. The objection does not lie to this action, there being no plea in abatement. It does not avoid former proceedings, because J. B. Bessey was in all of them impleaded under the name of Belden Bessey, and appeared and contested the actions under that name. No question of notice arises. The case cited by the defendants (*Dutton* v. *Simmons*, 65 Maine, 583), presented a question of notice, where third parties were interested. Here only the immediate parties are concerned. *Ryder* v. *Mansell*, 66 Maine, 167. It would be well for the plaintiffs to amend the writ in this action by inserting defendant's true name, and aver that former proceedings were

prosecuted against him by the other name. *Root* v. *Fellowes*, 6 Cush. 29; *Colton* v. *Stanwood*, 67 Maine, 25.

*Judgment for the plaintiffs.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.