## White *vs.* Barlow.

1. If a ditch for mining purposes be cut through land by the owners thereof, for use in connection with mines upon such land, the sale of the land under execution will convey the ditch, although no express mention of it may be made in the levy or the deed; and the water in such ditch, which gives it its value for mining purposes, passes with it.

(*a.*) Where the legislature chartered a company and authorized it to dig a ditch so as to convey the water from certain creeks to its mining lands, and the ditch was cut and used by the company, in a subsequent contest concerning the title thereto, the presumption would be that the company acquired in the mode prescribed by the charter the right to cut the ditch and convey the water over the lands of others after just compensation.

2. A tenant cannot dispute his landlord's title, and the title of the landlord is good against such tenant, or one holding under him with notice.

3. A bill was filed to recover certain property. The principal defendant filed a disclaimer of title as to the property, but asserted that it was the property of a corporation of which he was the president, and which it was prayed should be made a party, and that the acts

complained of as his were really those of the company. The answer also set up certain acts of the complainant as injurious to the company, and claimed damages therefor. On demurrer, the court struck so much of the answer as related to the wrongful acts of the complainant. The individual defendant excepted; the company did not:

*Held*, that the ruling was not one which injured the plaintiff in error, and the company is not before this court.

4. Where an assignment of error is based on the refusal to admit certain statements of a tenant in possession, such assignment cannot be passed upon by this court, unless the statements are set out.

5. The rejection of the amended charter of the company was not a ruling which could injure the individual member excepting.

6. Nor could it hurt the individual plaintiff in error, who had disclaimed title to the property in controversy, that the court submitted to the jury the question, whether the evidence showed that the ditch was being used by the defendants in *fi. fa.* at the time of levy and sale or not.

7. Although it would have been better to have charged that one purchasing from a tenant with notice would be estopped from denying the title of the landlord, yet where it was clear that the defendant had notice, the omission to charge as to its necessity was not error which would require a reversal.

(*a.*) Notice to the president of a corporation purchasing property is notice to the corporation.

8. Exception to a long paragraph of a charge containing numerous points, without specifying any error therein, is too general. The charge in this case was substantially right.

(*a.*) One who disclaims all title to, or interest in, property sued for cannot be hurt by a recovery thereof by the complainant; and such a verdict furnishes no ground for a motion for new trial or exception to this court on his behalf.

(*b.*) The law and facts sustain the verdict.

March 11, 1884.

Title. Deeds. Appurtenances. Mining. Landlord and Tenant. Estoppel. Vendor and Purchaser. Notice. Practice in Supreme Court. Corporations. Charge of Court. Before Judge ESTES. Lumpkin Superior Court. October Term, 1883.

Barlow filed a bill against White to recover possession of a water ditch in Lumpkin county, and to enjoin the defendant from interfering with it or cutting and taking wa-

ter from it. Defendant disclaimed title in himself, and asserted that he held as president of the Pigeon Roost Mining Company, and that the acts complained of were done as such, and it owned the property. He amended his answer by asking that the company be made a party, and alleging that complainant had constructed a " sluice-way and box " and ore-sheds, which interfered with the use of the property by the company, and that complainant had commenced suits which involved the title to the property, without the shadow of right, and to the injury of the company, and it was stated that the company therefore prayed damages, injunction, removal of the sheds, etc., and general relief.

The court, on demurrer, struck so much of the answers as set forth the injuries to the company from sluices, etc., and from the filing of the bill, and prayed damages and relief.

On the trial, the controlling points were as follows:

Barlow claimed the ditch and water under certain sheriff's deeds based, on *fi. fas.* against the Georgia Company in 1871. The levies were made on the lots by number, and the deeds conveyed the lots named with their rights, members and appurtenances, but neither the levy nor the deeds mentioned the ditch by name, and the sheriff testified that he did not levy on the ditch in terms, but levied on whatever went with the lots. It appeared that the Georgia Company was incorporated for mining purposes and empowered to cut this ditch, which was done, and the water conveyed to certain lots belonging to it, from which ore was " sluiced " to the mill; and the company and its agents controlled it for some years. The Pigeon Roost Company claimed by subsequent deeds, some of which specifically mentioned the ditch; and there was evidence of the use of the ditch for working other mines than that of the Georgia Company, but it was testified to be since the sale, or by consent of that company,

and the question was, whether the ditch passed under the sheriff's deed.

There was also evidence to show that one Weaver held as a tenant under complainant, and that he and one Parker made a deed which was one of the muniments of title under which the Pigeon Roost Company claimed; also that White, the president of the Pigeon Roost Company, had notice of the claim of complainant before he bought.

The jury found for the complainant. Defendant moved for a new trial, on the following grounds:

(1.) Because the verdict was contrary to law, equity, evidence and the weight of evidence.

(2.) Because the court refused to allow the amendment offered by defendant in his cross-bill and answer, and sustained the demurrer to said amendment.

(3.) Because the court refused to permit the jury to render a verdict in favor of defendant, upon the conclusion of complainant's evidence, upon motion, the sheriff's deed and other evidence not showing any title in complainant.

(4.) Because the court refused to permit John A. Parker, a witness for the defendant, to testify as to the statements of John W. Weaver, agent and tenant of the complainant, as to the ownership of the ditch in dispute. [What statements it was desired to prove was not shown.]

(5.) Because the court rejected from evidence the amended charter of the Pigeon Roost Company granted by the superior court in 1880. [The object of this seems to have been to show a recognition of White and his associates as successors to the original corporators under the act of 1876, p. 247. The amendments made were entirely immaterial.]

(6.) Because the court refused the following request: "In your inquiry as to Barlow's title, as he claims title by virtue of a levy and sale and sheriff's deed, you will have said levy and deed before you. Look into them and see whether or not said levy and deed contain any legal specification of said ditch. If they do not, then no title to the

ditch ever passed to Barlow by said deed. If you should be in doubt as to whether said levy and sale included the ditch, from the papers themselves, then you would be authorized to consider what J. P. Harrison, sheriff, testified as to whether the ditch was levied on or not. If it should appear the ditch was not levied on by the sheriff, then the sheriff could not sell or pass any title to Barlow, under said levy, no matter what may be stated in the sheriff's deed. Look into the evidence; if the ditch and the water therein were being used by three parties at that time on other property or lands not contained in said sheriff's deed to Barlow, then this ditch, in law, was not an appurtenance to said lands sold by the sheriff, and the title would not pass to Barlow."

(7.) Because the court charged as follows: " If the gold mill of the Georgia Company was on the property purchased by the complainant, and the ditch in dispute was used by the Georgia Company in connection with said mill in its mining operations, in washing down ore to said mill, the mere fact that any of said mining was done on other property was no reason why the ditch could not be an appurtenance to said mill and the lot on which it stood."

(8.) Because the court charged as follows: " If the jury find from the evidence that John W Weaver was in possession and control or use of the ditch in dispute as a tenant or agent of Barlow at the time the said Weaver joined in the conveyance of said ditch to the Pigeon Roost Gold Mining Company, then the said Weaver would be estopped from denying that the complainant, Barlow, was the owner of this ditch, and the purchasers under Weaver would likewise be estopped from disputing the fact that Barlow was then the owner of the ditch in dispute."

(9.) Because the court charged as follows : " A water-ditch may be held, owned, used and possessed, bought and sold and levied on and sold as a separate and independent estate. But a water-ditch may also be an appurtenant or incident to another estate. So that a tract or parcel

of land, when sold either at private or public sale, often carries with it many other things which are not mentioned. For instance, if a man sells a mill and describes it as a mill, the grant of a mill carries with it the head of water by which the mill is operated; so it also carries the right to flow the seller's land, and the whole right of water which had been previously used by the grantor. so it carries the flow of water in the race-way; and if it draws its principal supply of water from a reservoir on the same stream, at a distance above the mill, then the sale of the mill will convey also the upper dam and reservoir. In this case, you will inquire, by examining the title deeds in evidence and from all the other evidence in the case, what was sold to and what was bought by the plaintiff, L. M. Barlow. The plaintiff insists that the ditch in dispute was sold by the sheriff and bought by him, with the other property which he bought; that the ditch was an appurtenant or incident to the property and passed by his purchase. Now, in order to determine whether the ditch in question is an appurtenant or incident to the purchase of the plaintiff, Barlow, you will inquire what he did purchase, what was on it, what was it used for, what was the purpose for which it was before used, and what reasonable use it was likely to be put to, who made or dug the ditch, who used it, what was it dug for, what had it been used for, on what land was it used; did its use pertain to other property which Barlow, the plaintiff, bought; was the ditch necessary to the usual ordinary use and enjoyment of the other property? Had the Georgia Company, as whose property the plaintiff claimed it was sold, used the ditch or water? If so, what for? Was it necessary to ordinary, usual or convenient use of other property bought? These, and such as these, are pertinent inquiries to enable you to determine whether or not the ditch and its water now in dispute passed to Barlow by his purchase or not. If you believe from the evidence that the ditch in dispute had been made and used by those under whom he claims to work the gold

mines or mills which were on lands bought by plaintiff, and that said ditch was necessary to the profitable convenient use and enjoyment of the other property he had bought, then it was an appurtenance or incident to the property, and if it was such an appurtenance or incident, then a purchase of the lands, mines and mil s would convey with it the ditch also, and that, too, without a mention of it in the levy or the deed."

The motion was overruled, and defendant excepted.

WIER BOYD; M. G. BOYD, for plaintiff in error.

W. P. PRICE; R. H. BAKER; H. H. PERRY, for defendant.

JACKSON, Chief Justice.

We think that the evidence in this record shows very clearly title to this ditch in the Georgia Company. By the act of 1866, Pride, Barlow, and such others as should become associated with them as the Georgia Company for mining purpose, were empowered to cut this ditch. They did so and conveyed the water in it to their land, lots 726 and 727, and used it to "sluice the ore," to use the mining phrase, to their mill, which seems then to have been operated by steam; and the company, by its tenants, watchmen and servants, controlled it for some years. The company became indebted, judgments were rendered and executions were issued against them, and levied upon the lands to which the ditch conducted the water, and Barlow, the defendant in error, bought these lots of land with the rights, members and appurtenances thereof.

1. In so far as the ditch was cut through and upon the lands thus sold and conveyed by the sheriff, of course the title to the ditch cut thereon passed with the levy upon and title to the land, and it needed no express mention of the ditch, either in the levy or the deed, to carry with the land this ditch, any more than it would need a levy on a

mill race or stream of living water, cut and spread out to irrigate the land, or any other improvement put on it, to include the sale and conveyance of such things with the land. The title to land embraces all on it to any height or depth.

And the water in the ditch makes its value for the purpose for which it was dug, to be employed in and about digging and washing the golden ore and extracting the pure metal therefrom.

Therefore, as the legislature empowered the Georgia Company to dig the ditch from certain creeks, the presumption is that it acquired, in the mode prescribed by the charter, the right to cut the ditch and convey the water over the land of others, after just compensation, and the water thus conveyed to and through the company's own lands became necessary to the great purpose of their charter—the working of their mine—and thus the water in the ditch, which terminated in a reservoir of water on their land, became appurtenant to those lots; and thus the title to this necessary appurtenance to these gold lots passed as appurtenant to them by the sheriff's deed, though the levy and deed of the sheriff made no mention of the ditch in express terms. Washburne on Easements, 12, 15, 40, 42 *et seq.*, 77, 80, 291, 398; Angel on Water Courses, 10 Ed., par. 153 (a), 158, 159; *Imboden et al. vs. Etowah, etc., Co.*, 70 *Ga.*, 86.

2. But if the plaintiff in error holds under Weaver, as appears in the record, and Weaver, as the testimony shows, used the water under the defendant in error and the Georgia Company, can he question the title of his landlord?

If such be the case, and the evidence is strong that it is, then it would seem that the tenant could not dispute the landlord's title, and thus also Barlow's title would be good against such tenant and one holding under him with notice, and the proof is positive that White had notice.

We are clear, therefore, that the court did not err in

overruling the motion for a new trial on the 1st and 3d grounds of the motion.

3. Was there error which hurt the plaintiff in error in the second ground? It must be observed that the Pigeon Roost Mining Company is not a party to this writ of error. It is nowhere mentioned in it, and complains of nothing. Therefore, the question is, did the refusal of the court to allow the amendment, to the extent that the demurrer thereto went, hurt White? Certainly not, because he disclaims all title to the lots which were damaged, and the order of the court on the demurrer is not the denial of so much of it as makes the Pigeon Roost Company a party, but the set-off of damages.

The judgment on the demurrer is, " that so much of said answers as sets forth the injuries to respondents by reason· of complainant's having constructed ore-sheds and sluice-ways on respondents' lands, and praying an injunction against them and for damages by said alleged injuries, and also for damages by reason of filing complainant's bill in this case, be stricken." The rest is all left, and the record is that the court precedes this judgment on the demurrer with these words : " Upon demurrer to the answer of George W. White, defendant, and of the Pigeon Roost Gold Mining Company, it is ordered that," etc., as just copied. By reference to the answers, it will be seen that the injunction prayed for and the damages asked all relate to the company, and not to the plaintiff in error, and that the plaintiff in error answers as follows : " That he does not own any interest or claim to the property described in the complainant's bill, but that the property described in said complainant's bill, as the property of this defendant, is the property of the Pigeon Roost Gold Mining Company, and this defendant, George W. White, hereby disclaims and renounces all title, claim or interest in or to the property described in said complainant's bill ;" and further says, " that he is the president of the Pigeon Roost Gold Mining Company, and was such

at the time of filing complainant's bill, and that the acts complained of were the acts of the said company by said George W. White as president."

So that this plaintiff in error, George W. White, was not hurt as an individual, and in that character alone he excepts and complains, and assigns error here.

4. The fourth ground cannot be passed on by us, because what statements Weaver made to witness are not set out, and it is impossible to decide whether the ruling them out hurt or not.

5. We cannot see how the amended charter could help or hurt the plaintiff in error, and of course a new trial cannot be granted because it was ruled out.

6. As plaintiff in error disclaimed all title to the ditch, we are unable to see how the 6th and 7th grounds, if wrong, could hurt him; but we think there is no error in either.

7. The eighth ground is that the court erred in charging that, if Weaver was in possession as tenant or agent of Barlow, and united in the conveyance to the Pigeon Roost Company, he would be estopped, and purchasers under him would likewise. It would have been better had the court added " with notice " after the word " purchasers," but as it is clear that White had notice, the charge did not hurt him, and if he was president of the company, notice to him was notice to it, if it were complaining here.

8. The ninth ground of the motion embraces a very large extract from the judge's charge, and does not specify any particular error therein. Under repeated rulings, we do not consider such grounds, because the statute requires that errors must be specially assigned, which is not done, by putting in a motion for a new trial many paragraphs of a charge, and singling out none as erroneous, or not specifying how all taken together are erroneous.

But if it were considered, we are unable to discover any error hurtful to the plaintiff in error, or any error hurtful to anybody therein. Substantially, it is right.

In conclusion, we cannot understand how one who disclaims all title to, or interest in, the property sued for and recovered can be hurt by a verdict giving to a complainant that property; and if for no other reason, this judgment should be affirmed. We think, however, on a careful examination of the whole record, that the facts abundantly sustain the verdict, and the law therefore upholds it.

Judgment affirmed.