[No. 12578. In Bank. — September 3, 1889.] ˙

A. McSHANE, Respondent, *v.* R. D. CARTER et al., Appellants.

Mining Ground — Effects of Conveyance by Directors without Ratification by Stockholders. — Under the act of 1880, the directors of a mining corporation have no power or authority to convey the mining ground of the company without the consent of the holders of two thirds of the capital stock. A conveyance without such consent does not pass the title.

Id. — Mining Ground — Ditch — Appurtenance. — The term "mining ground," as used in the statute, includes all appurtenances. And a ditch by means of which the mine was operated is an appurtenance.

Appeal from a judgment of the Superior Court of Nevada County, and from an order refusing a new trial.

The facts are stated in the opinion.

˙ *C. W. Cross*, and *Cross & Simonds*, for Appellants.

- *Joseph Kirk, Fred Searls*, and *Spencer & McEnerney*, for Respondent.

. Hayne, C.—This was a suit to enjoin the defendant Carter, who is a sheriff, from selling the property of the plaintiff under a judgment obtained by the defendant

Smith against the Nevada Reservoir Ditch Company, from which plaintiff deraigned his title. The property which the sheriff was proceeding to sell is described in the complaint as follows, viz.:—.

"That certain reservoir ditch, sometimes called the big ditch, having its head about one half mile above the residence of Joseph Perrin, on Little Wolf Creek, in Grass Valley township, Nevada County, state of California, and extending thence westerly to the west line of Nevada County; and also that certain water right, being the right to take the waters of said Wolf Creek, and divert the same from said creek to the extent of the capacity of said ditch."

The plaintiff alleges that he was the owner of several mining claims described in the complaint, and that "said property advertised for sale and levied upon under said execution has been for years past and now is by plaintiff used *as appurtenant to said mining claims* and reservoirs and mining lands of plaintiff, *and is necessary and requisite to the working and operating thereof, and was and is appurtenant thereto."* And this was found to be the fact, both as to the plaintiff himself and as to his predecessors in interest.

In the plaintiff's chain of title to the claims and ditch were two deeds from mining corporations, viz., a deed from said Nevada Reservoir Ditch Company to the Golden Gate Consolidated Mining Company, made in 1882, and a deed from the latter to one Patrick Campbell, made in 1884. These deeds were authorized by the boards of directors of said respective companies, and were executed by the proper officers, but were not ratified by the stockholders of said corporations.

In 1880 the legislature passed an act entitled "An act for the further protection of stockholders in mining companies," which contained the following provision:—

"SEC. 1. *It shall not be lawful* for the directors of any mining corporation to sell, lease, mortgage, or otherwise

dispose of the whole or any part of *the mining ground* owned or held by such corporation, nor to purchase or obtain in any way any additional mining ground, *unless such act be ratified by the holders of at least two thirds of the capital stock of such corporation.* Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose." (Laws of 1880, p. 131.)

The court below gave judgment for the plaintiff, and the defendants appeal from said judgment, and from an order denying their motion for a new trial. The appeal from the judgment was taken too late, and must for that reason be dismissed. The appeal from the order denying the motion for a new trial, however, is properly presented. (*Pico* v. *Cohn,* 78 Cal. 384.) And the important question arising on that appeal is, whether the evidence is sufficient to show that the plaintiff was the owner of the property which the sheriff was proceeding to sell; and this depends upon whether the directors of said mining companies had power or authority to convey the property in the absence of a ratification by the stockholders as specified in the act of 1880.

1. We think that the provision of said act goes to the power or authority of the directors. It cannot be construed to relate merely to their personal liability, for no penalty is imposed upon them; and to so construe it would be to practically nullify the act. In our opinion, the directors of mining corporations have no power or authority to convey the mining ground without the consent of holders of two thirds of the stock, given as prescribed by the act. And it follows without such consent the title does not pass. And if this be so, the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof.

Nor can the consent of the stockholders be presumed

from the mere fact of the conveyance, whether under the corporate seal or not, for such consent or "ratification" may be after the deed is executed, and hence is not necessarily or presumptively involved in the execution of such deed.

2. Is the property in controversy here within the purview of the act? It is to be observed that the requirement relates to "the mining ground." Just what that term includes might perhaps admit of question in certain cases. Does it include only the ground actually mineralized? or does it embrace all the other adjacent lands of the corporation? It is not necessary to consider that precise question in this case. But we think that whatever realty is incident or appurtenant to the mineralized ground worked as a mine—whatever would pass by a conveyance of "the mine" itself as an appurtenance thereto—is within the meaning of the requirement. The transfer of a thing transfers all its incidents and appurtenances. (Civ. Code, sec. 1084.) So that the question is, whether a ditch and water right by means of which "mining ground" is operated and used is an incident or appurtenance thereof.

In this regard it is to be remembered that the court finds that the ditch and water right were appurtenant to the mines formerly owned by said corporations, and purported to have been conveyed by them, and necessary to the use and operation thereof. And we think that this finding is in accordance with correct principles. The relation of a mine to the water by which it is operated is analagous to the relation between an ordinary mill and the water upon which its use depends.

Water is as essential to the use of the one as it is to the use of the other. And it is well settled with reference to ordinary mills that the water right is appurtenant to the mill, and will pass by a conveyance thereof, either with or without express mention of "the appurtenances." This has been the law from early periods.

In Touchstone it is laid down that "by the grant of mills, the waters, flood-gates, and the like, that are of necessary use to the mills, do pass." (Shep. Touch. 89.) And in the old case of *Nicholas* v. *Chamberlain*, Cro. Jac. 121, "it was held by all the court upon demurrer that if one erect a house, and build a conduit thereto in another part of his land, and convey water by pipes to the house, and afterwards sell the house with the appurtenances, excepting the land, or sell the land to another, reserving to himself the house, the conduit and the pipes pass with the house, *because they are necessary and appurtenant thereto*." Chancellor Kent says: " A conduit conveying water to the lands sold from another part of the lands of the grantor will pass as being necessary or *quasi* appurtenant thereto. So a raceway conducting water from a mill to another part of the grantor's land has been held to pass by a conveyance of land with the mill thereon." (4 Kent's Com. 467.) And in *Richardson* v. *Bigelow*, 15 Gray, 154, the court, per Chief Justice Shaw, said: "It is a well-settled rule of law that the grant of a mill carries with it by necessary implication the right to the use of the water coming to the mill and furnishing power for working it, and also to the canal or raceway which carries the water from the mill, to the full extent of the grantor's right and power so to grant them." And this proposition is in accordance with the preponderance of authority, both as to the water connected with or arising from the particular tract, and that arising from or connected with adjacent tracts of the same grantor, provided it was necessary to the use of the mill and was so used. (*Perrin* v. *Garfield*, 37 Vt. 312; *Morgan* v. *Mason*, 20 Ohio, 401; 55 Am. Dec. 464; *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190; 14 Am. Dec. 346; *Neaderhouser* v. *State*, 28 Ind. 257; *Whitney* v. *Olney*, 3 Mason, 280; *Bank* v. *Miller*, 7 Saw. 163; *Pickering* v. *Stapler*, 5 Serg. & R. 110; 9 Am. Dec. 336; *Hammond* v. *Woodman*, 41 Me. 177; 66 Am. Dec. 219; *Baker* v. *Bessy*,

73 Me. 472; 40 Am. Rep. 377; *Coolidge* v. *Hager*, 43 Vt.
9; 5 Am. Rep. 256; *Le Roy* v. *Platte*, 4 Paige, 82; *Curtiss*
v. *Norton*, 58 Mich. 411.)

And the rule holds, not only as to the water right it-
self, but also as to the conduit or ditch through which
the water flows. For while as a general rule land does
not pass as an appurtenant to other land, yet it may be
of such a nature as to pass with the principal thing. In
*Sheets* v. *Seldon*, 2 Wall. 187, 188, it was held that an
adjoining parcel of land passed by a grant of a canal.
And the court, per Field, J., said: " The objection that the
deed does not cover the premises in controversy rests
upon the fact that it does not convey the parcels of land
for which the action is brought by specific designation
and description. Such designation and description,
though usual, are not always essential. Land will often
pass by other terms. Thus a grant of a messuage, or a
messuage with the appurtenances, will carry the dwell-
ing-house and adjoining buildings, and also its orchard,
garden, and curtilage. The true rule on the subject is
this: that everything essential to the beneficial use and
enjoyment of the property designated is, in the absence
of language indicating a different intention on the part
of the grantor, to be considered as passing by the con-
veyance." (And see, to the same effect, *Sparks* v. *Hess*,
15 Cal. 195, 196.)

The statutory definition of an appurtenance is in har-
mony with the above rule. "A thing is deemed to be
incidental or appurtenant to land when it is by right
used with the land for its benefit, as in the case of a way
or *watercourse*, or of a passage for light, air, or heat from
or across the land of another." (Civ. Code, sec. 662.)

And in pursuance of this definition, it was held in
*Farmer* v. *Ukiah Water Company*, 56 Cal. 11, that where
water had been conducted through a pipe to the grantor's
premises, and rightfully used for domestic purposes, and
for irrigation of his grounds, it passed by his deed as

an appurtenance to the land. And a decision similar in principle was made in *Hungarian Hill Company* v. *Moses,* 58 Cal. 168, with reference to a ditch used to operate a mine. (And compare *McDonald* v. *B. R. & A. W. Co.,* 13 Cal. 235, 236; *Quirk* v. *Falk,* 47 Cal. 455; *White* v. *Barlow,* 72 Ga. 887.)

If, therefore, we are right in our construction that the term "mining ground" includes all the realty that is incident or appurtenant thereto, it follows that the provision applies to the case in hand, and that the title did not pass by the deeds in question, in the absence of a ratification by the stockholders.

In this view it is unnecessary to consider the other questions argued.

We therefore advise that the appeal from the judgment be dismissed, and that the order denying the motion for new trial be reversed, and the cause remanded for a new trial.

BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the appeal from the judgment is dismissed, and the order denying the motion for new trial is reversed, and cause remanded for a new trial.

THORNTON, J., dissented.

Rehearing denied.