McCUTCHEON et al. v. MERZ CAPSULE CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1896.)

No. 320.

1. CORPORATIONS—ULTRA VIRES — ABANDONMENT OF CORPORATE PURPOSE— HOLDING STOCK IN OTHER CORPORATIONS.

The N. Co., a New Jersey corporation, the M. Co., a Michigan corporation, and two copartnerships, all being engaged in the manufacture of the same goods, entered into an agreement by which it was provided that the parties should organize a corporation to manufacture the goods; that the stock of such corporation should all be allotted to the several parties, in certain proportions; that the parties should convey all their property, of every kind, to the new corporation, and receive therefor mortgage bonds of such corporation, bearing 8 per cent. interest, to the amount of the appraised value of the property,—such bonds to be secured by mortgage of all the property of the new corporation, and the appraisal to be made by appraisers appointed by the parties in the manner provided by the agreement. Each of the parties agreed not to engage thereafter in the manufacture of the goods. The new corporation was organized under the laws of New Jersey. The stock was issued, and conveyances of the property of the parties to the agreement were made to such corporation, but it did not immediately take possession of the property of the M. Co., or issue the bonds. While still in possession of its property, the M. Co. determined to withdraw from its engagements, so notified the officers of the new corporation, tendered back the stock, and demanded a rescission of the agreement. This was refused, and the new corporation, through its agents, attempted to gain possession of the property of the M. Co. by force, and threatened to continue such attempts. Thereupon the M. Co. filed its bill to cancel the agreement and restrain interference with its property, and the new corporation filed a cross bill demanding specific performance of the agreement. The M. Co. was organized to manufacture the goods which were manufactured by the other parties to the agreement and by the new corporation, and its charter contained no authority to hold stock in other corporations. *Held,* that the agreement and transfers, forming part of one plan, by which the M. Co. was to abandon the exercise of its corporate powers, and restrict itself to the holding of the stock of another corporation, through which its proper business was to be carried on, were ultra vires as to the M. Co., and void.

2. CONTRACTS—ILLEGALITY—PARTIES IN PARI DELICTO—EXECUTORY CONTRACTS.

*Held,* further, that as the agreement was still in large part executory, and had been promptly disaffirmed by the M. Co., the rule as to estoppel upon parties in pari delicto did not apply, and cancellation of the agreement, with an injunction against interference with the property of the M. Co., might be granted, as well as a dismissal of the cross bill praying specific performance.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Two corporations and two partnerships, severally engaged in the manufacture and sale of hard, empty, gelatine capsules, entered into an agreement, dated November 29, 1893, for the combination and consolidation of their several properties and business interests. The plan by which this was to be accomplished is fully set out in the agreement here following:

"This agreement made the 29th day of November, 1893, between the National Capsule Company, a corporation organized under the laws of the state of New Jersey, and doing business at Indianapolis, Indiana; the Merz Capsule Company, a corporation organized under the laws of the state of Michigan, and doing business at Detroit, Michigan; J. E. Warren and James Wilkie, copartners doing business at Detroit, Michigan, as the Warren Capsule Company; and John A. Grogan and W. H. Warren, copartners doing business at Detroit, Michigan, as the Michigan Capsule Company,—Witnesseth: (1) That said parties agree to organize a corporation for the manufacture and sale of hard, empty, gelatine capsules. The main office and point of shipment of the goods manufactured by said company to be at Detroit, Michigan. The capital stock to be ($70,000.00) seventy thousand dollars, allotted among the parties hereto as follows: Twenty thousand dollars ($20,000.00) each to be allotted to the National Capsule Company, the Merz Capsule Company, and jointly to the parties doing business as the Warren Capsule Company, and ten thousand dollars ($10,000.00) to be allotted jointly to the parties doing business as the Michigan Capsule Company. Three-quarters of the stock allotted to each of said parties shall be issued at the time of the organization of the company. The remaining one-quarter of each allotment shall be held as treasury stock of the new company until the several parties shall demonstrate that the present capacity of their respective plants is as follows: The National Capsule Company, at least twenty gross of completed capsules per day; the Warren Capsule Company, at least twenty gross of completed capsules per day; the Michigan Capsule Company, at least ten gross of completed capsules per day. The capacity of each plant to be determined by the average amount produced during a test of five consecutive days of ten hours each, to be had in the presence of representatives of each party, and under ordinary conditions of manufacture. Such test to be had within three months from the date of the organization of said corporation, unless said test shall be prevented by reason of injury or destruction of the plant by the elements, or for other good and valid reasons, in which case a reasonable time in addition shall be allowed to restore the plant to a proper working condition. In case any of the parties above named shall fail to demonstrate that the capacity of their plant is as above stated, the twenty-five per cent. of stock retained by said corporation shall be forfeited by said party, and remain the property of the corporation. (2) The parties hereby agree to sell and convey to said corporation, upon its organization, free and clear from all incumbrances, their respective plants operated by them in the manufacture of hard, empty gelatine capsules, including all real estate owned and used by them for such purpose, together with all machinery and appliances of every kind pertaining thereto, stock in trade, good will, all patentable devices, labels, trade-marks, trade secrets (except processes for treating gelatine), now owned by said parties, and used in connection with the business of manufacturing hard, empty gelatine capsules, and in payment therefor (except for manufactured stock or boxes or raw materials) to receive from said corporation mortgage bonds to the amount of the appraised value of the property thus conveyed to said corporation. Said bonds to bear interest at eight per cent. per annum, payable five years from the date of issue, and only sufficient amount of bonds to be issued to cover the value of the property conveyed to said corporation by all of the parties hereto. Said bonds to be secured by mortgage covering all of the property of every kind belonging to said corporation. The value of the property conveyed to said corporation by the respective parties shall be determined in the following manner: If all of the parties hereto are unable to agree upon the value of the property conveyed by each, the value of the real estate now owned by each party in Detroit shall be appraised by three disinterested competent persons, one to be chosen by the National Capsule Company, and one by the other three parties, and the two so chosen to select

a third. The decision of said appraisers, or the majority of them, to be final. The value of the real estate now owned by the National Capsule Company in Indianapolis to be appraised by three appraisers to be chosen in a similar manner, whose decision, or that of a majority of them, is to be final. The machinery and appliances of every kind, including box-making machinery, to be appraised by three disinterested and competent appraisers at the price at which it can be duplicated in open market; and, in estimating the value thereof, only such machinery and appliances shall be considered as are practical in the manufacture of empty capsules, and now used by the parties hereto in the conduct of their business. The appraisers to be chosen as follows: The National Capsule Company to select an appraiser in Indianapolis, the other parties to select an apprasier from Detroit, and the two so chosen to select a competent expert machinist from a city outside of the two cities above named; the decision of such appraisers, or that of a majority of them, to be final. (3) The parties hereto agree that each shall receive, in payment for the manufactured stock, boxes, and raw material conveyed to said corporation, notes of said corporation payable six months from the date of delivery of the property, and all marketable manufactured and unmanufactured stock of completed empty capsules to be paid for at thirty cents per thousand; partially manufactured goods, and all other material as can be readily utilized at appraised value, and raw material, to be appraised at market value. (4) All expenses of appraisal and organization of the new company shall be borne by the new company. (5) Each of the parties hereto agree, from the date hereof, not to make, sign, or accept any contract whatsoever for the future sale or delivery of any hard, empty capsules, or any other contract whatsoever, except ordinary contracts for immediate sale and delivery. All old existing contracts with drug jobbers are to be completed by the new company, provided such are not for over fifty gross of capsules. (6) It is also agreed that none of the parties hereto shall hereafter engage in the manufacture or sale of empty gelatine capsules in any manner whatsoever. In witness whereof the parties hereto have set their hands and seals, and have affixed the seals of the various corporations, by the hands of their respective officers thereunto duly authorized, the day and year first above written. All patents, procured or pending, owned by parties hereto, shall be assigned to the new company, with the sole provision that there shall be a reversion to the present owner thereof in case of dissolution or failure, or sale of assets under the mortgage, or retirement from active business of the new corporation. The word 'dissolution' shall, however, not be construed to apply to a nominal or formal reorganization or merger of the new company with any other corporation, person, or persons."

The steps taken in pursuance of this scheme were these: First. The agents of the parties organized a new corporation under the general law of New Jersey, called the United States Capsule Company. The capital stock of this new company was subscribed and allotted as follows: Twenty thousand dollars par value to each of the two contributing corporations; twenty thousand dollars to one of the partnerships, and ten thousand dollars to the other; single shares being allotted to such members of the contracting corporations as were essential to qualify them for becoming directors. Second. The property owned and operated by each of the parties in making and selling hard, empty gelatine capsules was valued by appraisers as provided in the agreement, and conveyances and bills of sale executed to the United States Capsule Company. The instrument of sale executed by the appellee, the Merz Capsule Company, bears date December 21, 1893, and recites a consideration of $15,000, "and other good and valuable considerations." In point of fact, this part of the transaction is yet incomplete. No mortgage has been made by the United States Capsule Company, and no bonds have been executed for the appraised value of this property, as contemplated by the agreement, though the United States Capsule Company did give to the Merz Capsule Company a certificate reciting that the latter company was to receive bonds to the amount of the appraised value of its property when the mortgage should be made and the bonds executed.

On the same day that the above-mentioned deed was made and delivered, the Merz Capsule Company accepted a lease upon its premises, machinery,

plant, etc., in consideration of a nominal rent, the lease to terminate January 15, 1894, and thereafter continued in the use and occupation of its property, operating the plant for the purpose of working up stock on hand not included in the sale. While thus remaining in the actual possession of its premises and manufacturing plant, the Merz Capsule Company determined to withdraw from its engagements and contracts with the other parties to the agreement; being advised, as the original bill alleges, that the contract then entered upon, and the conveyance in furtherance thereof, were unlawful, and in excess of its corporate powers. The motive which led to this repentance is not of great importance, though the evidence seems to make it pretty clear that disappointment in obtaining the control of the new business led to serious doubt as to the validity of the arrangement. This determination was notified to the officers and directors of the new corporation, the stock certificates tendered back, and a complete recission demanded. This tender was refused, and a rescission denied. Having also given public notice of the invalidity of the instrument under which the United States Capsule Company asserted title and right of possession to its manufacturing plant, the Merz Capsule Company resumed its ordinary course of business as an independent manufacturing corporation. On the 22d of January, 1894, while thus in the full and peaceable possession of its premises, and the use of its machinery and appliances, the defendants are shown to have made an entry upon those premises, through the officers, agents, and servants of the United States Capsule Company, under circumstances of considerable aggravation, for the purpose of removing the machinery and stock of the said Merz Company, and did actually tear down a part of such machinery, and remove a part thereof from the premises, and were only prevented from completely dismantling the factory by an exertion of force. In consequence of this alleged trespass, and because, as further alleged, like trespasses were threatened and feared, under color of the instrument conveying title to the United States Capsule Company, the Merz Capsule Company filed its original bill in the circuit court for Wayne county, Mich., against the United States Capsule Company as a corporation of the state of New Jersey, and Robert H. McCutcheon, its president; the National Capsule Company, another corporation of the state of New Jersey; J. E. Warren and James Wilkie, copartners under the name and style of the Warren Capsule Company; and John A. Grogan and William H. Warren, copartners under the name and style of the Michigan Capsule Company. This bill, after setting out the several contracts, conveyances, etc., referred to, and charging that the object and purpose of the combination was to advance the price of empty capsules by suppressing competition and creating a monopoly, as a ground for equitable relief set out the trespass before mentioned, and charged that for the purpose of compelling complainants to stand by and carry out the plan and scheme set out in the agreement of November, 1893, the defendants threatened still other and further trespasses and interference with complainant's business. It alleged that the machinery and appliances used in its business were of "peculiar character and make," and very difficult to replace, and that, if defendants were suffered to take and remove same, its business would be stopped indefinitely, and irreparably ruined, and that its remedy through a court of law was inadequate. It also insisted that to completely relieve complainants against the oppressive and unlawful trespasses, done and threatened, under color of the several agreements and conveyances mentioned, the same should be canceled, and defendants enjoined from interfering in any way with the possession of its property and premises. A temporary injunction was granted as prayed. Thereupon the suit was removed from the United States circuit court upon petition of defendants. After the removal the said United States Capsule Company answered and filed a cross bill setting up the said several agreements, contracts, and conveyances as valid and legal instruments, and praying that they might be so decreed, and that it be placed in full and peaceable occupation of all the property, premises, plant, and machinery thereby transferred to it, and that the same, in all regards, be specifically enforced and performed. Upon full proof, and by final decree (67 Fed. 414), the circuit court perpetually restrained the United States Capsule Company from the

commission of further trespass as prayed, and declared the several agreements ultra vires and illegal under the law of Michigan. The further decree of the court was "that neither the defendant the United States Capsule Company, nor any other of the defendants in the original bill of complaint in this cause, has any title, right, claim, or demand whatsoever in, to, or upon the property of the complainant, the Merz Capsule Company, described in the bill of complaint, and the title thereto is quieted in the said Merz Capsule Company, free from any claims of the defendants in said original bill, or of any of them." The court declined to order an account of damages sustained by complainant, and for this purpose remitted it to a court of law. The cross bill of the United States Capsule Company was also dismissed, as stating no case entitling it to specific performance. From this decree the United States Capsule Company and its codefendants to the original bill have appealed, and assigned as error so much of the decree as gave to the Merz Capsule Company the relief mentioned, and the United States Capsule Company has also assigned error upon the dismissal of its cross bill.

Henry M. Campbell, for appellants.
Edwin F. Conely, for appellee.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

After stating the facts as above, LURTON, Circuit Judge, delivered the opinion of the court.

The solution of this case depends upon the validity of the agreement of November, 1893, and the subsequent contracts and conveyances made in furtherance thereof. The appeal perfected, and the errors assigned, involve, not only the propriety of the decree granting any relief to the complainant, but the decree dismissing the cross bill of the United States Capsule Company. The object of that cross bill was to have the agreement of November 29, 1893, and all the proceedings taken and conveyances made in pursuance thereof, decreed to be valid, and specifically enforced, by placing the United States Capsule Company in full possession and control of all the property of the Merz Capsule Company, and by enjoining the latter corporation from interfering with the possession or use of same by the cross complainant. These several agreements, contracts, and conveyances are but parts of one plan, and must be read and construed together. The validity of the instrument passing title to the property of the Merz Capsule Company depends upon the objects and purposes of the conveyance. Having been made in express furtherance of the combination scheme inaugurated November 29, 1893, its validity must depend upon the legality of that agreement. Both the original and cross complainant, in their pleadings, have distinctly recognized this, and sought relief upon that basis. The invalidity of this agreement and conveyance has been urged upon several grounds: First, it has been said, that the scheme embodied in the agreement for a combination is illegal, as tending to create a common-law monopoly. Much of the evidence found in a very large record has been addressed to this aspect of the question, and appellee earnestly insists that the evidence establishes the fact that the sole object and purpose of the two corporations and two firms, in undertaking to bring about a consolidation of their several manufacturing interests, was to advance and control prices, through a monopoly of the business of making empty gelatine

capsules. Second, it has been also insisted that the whole scheme in-
volved the creation of an unlawful combination or trust, within
the prohibition of the Michigan statute on that subject. Laws Mich.
1889, Act, No. 225, § 3; 3 How. Ann. St. § 9354j. Finally, it is urged
that whether the combination plan, and the instruments in further-
ance thereof, be illegal, as tending to a monopoly, or as a combina-
tion unlawful under the Michigan antitrust statute, it is null and
void, as to the Merz Capsule Company, as in excess of its corporate
powers under the law and policy of Michigan in respect of its domes-
tic corporations.

We have no difficulty in assenting to this latter position, and
therefore find it unnecessary to express an opinion upon either of
the first two propositions, although they involve, and have elicited,
a learned discussion concerning monopolies, competition, restraint
of trade, and like problems of political economy. The general rule
is that, without express authority, a corporation cannot invest its
funds in the stock of another corporation. Mor. Priv. Corp. § 431;
Cook, Stock & S. § 315; Marbury v. Land Co., 10 C. C. A. 393–401, 62
Fed. 335; Freestone Co. v. Harvey, 92 Tenn. 115–118, 20 S. W. 427;
Talmage v. Pell, 7 N. Y. 328; Central R. Co. v. Pennsylvania R.
Co., 31 N. J. Eq. 475; Hazlehurst v. Railroad Co., 43 Ga. 57; Peo-
ple v. Chicago Gas Trust Co., 130 Ill. 268–284, 22 N. E. 798. To
this rule there are certain exceptions, due in part to strong implica-
tion from the powers expressly granted, or to the objects and pur-
poses for which stock had been acquired. Thus under the rule that
the implied powers of a corporation are only such as are necessary
to the exercise of its corporate franchises, it has been held that,
where a debt was collected in the stock of another company, it was a
valid transaction, under the implied authority to collect its debts in
the most efficient way. Talmage v. Pell, supra; Howe v. Carpet
Co., 16 Gray, 493; Hodges v. Screw Co., 1 R. I. 312–347. So, in
Treadwell v. Manufacturing Co., 7 Gray, 393–405, it was held that, for
the purpose of retiring from business, it was competent for a manu-
facturing corporation to sell the whole property of the corporation,
taking payment in the shares of a new corporation, to be distrib-
uted among the stockholders of the old company. Confessedly, the
act under which the Merz Capsule Company was organized confers
no express authority under which it would be authorized to invest
capital stock in the shares of another corporation. Neither can it
be insisted that there is any legislative permission whatever in the
statutory law of Michigan which confers any such power upon the
corporations of that state. That the facts of this case do not
bring it within any well-recognized exception to the general rule in-
hibiting such investments is to us a most obvious proposition. By
the agreement of November 29, 1893, which we are asked to sanc-
tion and specifically enforce, the Merz Capsule Company contracted,
not only to sell its entire manufacturing plant, including patents,
processes, and good will, to the new corporation, when organized,
but that it would never again engage in the same business. If its
purpose had been in good faith to wind up its affairs, and distribute

the price to be paid among its stockholders, or to convert the same into money for purposes of distribution, the transaction might be supported under the authorities heretofore cited, although payment was to be received in the stock and bonds of the new company. The implied power to wind up its business and to make a sale of its property would probably authorize a sale for stock in another corporation. Holmes & Griggs Manuf'g Co. v. Holmes & Wessell Metal Co., 127 N. Y. 252, 27 N. E. 831. But here there was no purpose to wind up, and abandon the field. The avowed object was to continue corporate life and activity through the instrumentality of another corporation. There was to be a corporation within a corporation. Individual activity was to cease, but corporate energy was to be exercised through a living corporation, whose life and functions were to be controlled through the shares held by its corporate creator and master. Forbidden to exercise the very functions for which the breath of corporate life had been breathed into it by the state, there would remain standing only the shell of a corporation, retaining corporate existence only for the purpose of controlling and directing the new corporation, in which was invested its corporate capital, and to receive and distribute its aliquot proportion of those earnings as dividends among its own shareholders. The effect of this action of the appellee was to divest itself of the power to exercise the essential and vital elements of its franchise, by a renunciation of the right to engage directly and individually in the very business which it was organized to carry on, and is a disregard of the conditions upon which corporate existence was conferred. The state is presumed to grant corporate franchises in the public interest, and to intend that they shall be exercised through the proper officers and agencies of the corporation, and does not contemplate that corporate powers will be delegated to others. Any conduct which destroys their functions. or maims or cripples their separate activity, by taking away the right to freely and independently exercise the functions of their franchise, is contrary to a sound public policy. Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478; Thomas v. Railroad Co., 101 U. S. 71; People v. North River Sugar Refining Co., 121 N. Y. 582–625, 24 N. E. 834; Mallory v. Oil Works, 86 Tenn. 598, 8 S. W. 396.

The evils incident to such a perversion of corporate capital and stifling of corporate franchises are further aggravated by the peculiar circumstances attendant upon the combination scheme now under consideration. In the execution of this plan, a New Jersey charter of incorporation was secured, though it was never contemplated to carry on business in that state. The active functions of the Michigan corporation, it was contemplated, would be exercised alone under color of this foreign "tramp corporation." This substitution of a New Jersey charter and corporation was not without purpose. The Michigan statutes, under which the Merz Capsule Company had been organized, provided for a stockholders' liability for labor debts. It also required public reports, at stated intervals, showing the character of the corporation business, such as

amount of its capital stock, amount of debts and assets, and a list of stockholders. All of these provisions are eminently calculated to bring about prudent and conservative conduct of corporate business, and to advise the public, in some degree, as to the solvency of the corporation with which they may have dealings. The New Jersey corporation law contains none of these features, and in no way undertakes to safeguard either the shareholders or the public. These differences in the law and policy of the two states was, on the evidence of appellants themselves, a determining feature in procuring a New Jersey charter under which to thereafter carry on the enlarged and combined business. Another remarkable feature deserves comment. This New Jersey corporation, under color of which the combining corporations and firms were to carry on business, contemplated no capital stock other than that contributed by the promoters of the scheme. This was, as mentioned in the second paragraph of the agreement, to consist of "their respective plants, operated by them in the manufacture of hard, empty gelatine capsules, including all real estate owned and used by them for such purpose, together with all machinery and appliances of every kind pertaining thereto, stock in trade, good will, all patentable devices, labels, trade-marks, trade secrets (except processes for treating gelatine.)" The sellers themselves were to appraise this property, through one appraiser selected by the National Capsule Company, one selected by the three other promoters, and a third selected by the two thus appointed. When the value was thus fixed by the sellers, the so-called buyer was to make a mortgage upon the whole of this property, and issue bonds bearing 8 per cent. interest, to be divided among the contributors in proportion to their several contributions. The capital stock of the corporation was also to be divided, in agreed proportions, among the parties organizing and controlling this new instrumentality for carrying on business. Having thus secured their contributions to the capital stock against any possible hazards of the business, by taking a mortgage to secure themselves against loss, and having also provided for the management and control of the business, by the practically free distribution of the stock in proportions agreed upon, the corporation was launched upon the business public without a dollar of capital responsible for its general engagements. As a plan for doing business, with the chance of loss reduced to a minimum, it is quite as unique as the instance reported in the case of Morrow v. Steel Co., 87 Tenn. 262, 10 S. W. 495. Nothing, it seems to us, need be added to justify the conclusion that the agreement of November 29, 1893, as to the Merz Capsule Company, and the subsequent conveyance and bill of sale to the United States Capsule Company made in furtherance of that agreement, are inoperative, null, and void, as in excess of its corporate powers. Being ultra vires, the consent of its stockholders cannot legalize or vitalize the transaction.

The final objection urged by appellants is that if the agreement between the Merz Capsule Company and its associates is subject to the objection that it was unauthorized by its organic law, and con-

trary to the public policy of Michigan, the objection cannot be urged by that corporation as a ground for affirmative relief in a court of equity. Undoubtedly, if the parties are in pari delicto, and the contract has been fully executed on the part of the plaintiff, and has not been repudiated by the defendant, neither a court of law nor equity will lend its active assistance to the recovery of property or money paid on such a contract, or aid in bringing about its surrender or cancellation. The doctrine of the courts applicable was stated very aptly by Mr. Justice Gray in St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 407, 12 Sup. Ct. 953, when he said:

"The general rule, in equity, as at law, is, 'In pari delicto, potior est conditio defendentis;' and therefore neither party to an illegal contract will be aided by the court, whether to enforce or to set it aside. If the contract is illegal, affirmative relief against it will not be granted, at law or in equity, unless the contract remains executory, or unless the parties are considered not in equal fault, as where the law violated is intended for the coercion of the one party and the protection of the other, or where there has been fraud or oppression on the part of the defendant. Thomas v. Richmond, 12 Wall. 349, 355; Spring Co. v. Knowlton, 103 U. S. 49; Story, Eq. Jur. § 298. While an unlawful contract, the parties to which are in pari delicto, remains executory, its invalidity is a defense in a court of law; and a court of equity will order its cancellation only as an equitable mode of making that defense effectual, and when necessary for that purpose."

But this rule by which the defense of particeps criminis is sanctioned by courts, as stated by Lord Truro in Benyon v. Nettlefold, 3 Macn. & G. 102, and approved by Lord Selborne in Ayerst v. Jenkins, L. R. 16 Eq. Cas. 283; is rested "on the ground of public policy, namely, that those who violate the law must not apply to the law for protection." But, in the case last cited, Lord Selborne notices a very obvious limitation by saying:

"When the immediate and direct effect of an estoppel in equity against relief to a particular plaintiff might be to effectuate an unlawful object, or to defeat a legal prohibition, or to protect a fraud, such an estoppel may well be regarded as against public policy."

The contract in the case at bar between the parties in pari delicto is, in a large degree, still executory. Though a deed and bill of sale had been executed and delivered in furtherance of the original agreement, possession has not been surrendered, and the bonds to be delivered in payment have neither been delivered nor executed. The conveyee under the deed has indeed applied to this court, through its cross bill, for the specific performance of the agreement, by being placed in possession under the deed, and for an accounting with the appellee. There is an obvious distinction between the attitude of a complainant asking relief against an unexecuted agreement, illegal for reasons not appearing upon its face, and where it is sought to recover back money or property paid upon a contract fully executed. The cases stating this distinction are referred to and commented upon by Lord Cottenham in Simpson v. Lord Howden, 3 Mylne & C. 99 et seq.; by Lord Selborne in Ayerst v. Jenkins, L. R. 16 Eq. Cas. 275; and Justice Gray in St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 393, 12 Sup. Ct. 953. In Whaley v. Norton, 1 Vern. 483, the master of the rolls said "that there would

be a difference in these cases between a contract executed and executory, and that this court would extend relief as to things executory, which, if done, it may be might stand." The case of Spring Co. v. Knowlton, 103 U. S. 49, is highly instructive, and supports the proposition that affirmative relief may be extended to one of the parties in pari delicto, where the contract is unexecuted, and he be desirous of rescinding it, provided the contract was not one malum in se.

The specific performance sought under the cross bill has rendered necessary the expression of a definite opinion as to the validity of the contract thus set up by the United States Capsule Company. In view of this opinion, necessitating an affirmance of the decree, so far as it dismissed the cross bill, ought we to stop at this point, and decline to grant any part of the relief sought by the appellee? The Merz Capsule Company does not seek to recover back either property or money paid or delivered under its agreement or deed. Before actually surrendering possession of its premises, machinery, and appliances, or transferring its patents and processes, it repudiated the whole scheme, and tendered back all that it had ever received, and has kept that tender good. But it has neither lost possession, nor received the bond payment it was entitled to receive. Having given notice of its purpose to go no further in an illegal scheme, it remained in the peaceable possession of its property, and in the ordinary conduct of its business. Without resorting to legal proceedings, the United States Capsule Company sought to obtain possession of the property of the recalcitrant grantor, and, when prevented by force from accomplishing its unlawful object, avowed its purpose by a repetition of the trespass to obtain a possession which it could not secure by a resort to legal procedure. The effect of a continuance of these unlawful methods to obtain possession, as shown by pleadings and proof, would be most injurious to the business of the complainant, and the remedy at law inadequate. Under all these circumstances, to hold that the complainant is estopped to rely upon the illegality of the agreement and conveyance to which it was a party would be to effectuate an unexecuted, unlawful object, and aid in the defeat of a legal prohibition. The door of this court should not be closed against one seeking to extricate himself from an unlawful connection, provided relief is sought without delay, and before the contract is executed, or other persons have irrevocably acted in reliance upon its supposed legality. The decree of the court declaring the illegality of the agreement of November 29, 1893, and of the deed of December, 1893, and restraining the appellants from interfering with the title or possession of appellee under color thereof, should be, and accordingly is, affirmed.