| 29 | 397 |
|----|-----|
| 30 | 183 |
| 30 | 250 |

FORRESTER & MACGINNISS, RESPONDENTS, *v.* BOSTON & MONTANA CONSOLIDATED COPPER & SILVER MINING CO. ET AL., APPELLANTS.

(No. 1,719.)

(Submitted December 7, 1903.  Decided January 23, 1904.)

*Corporations—Action by Stockholders—Transfer of Property —Cancellation—Equity Decree—Attorney's Fees—Value of Services—Allowance—Trial by Jury—Appeal—Final Judgment—Presumptions — Value—Classes of Actions—Cross-Examination.*

1.  A transfer by the directors of a corporation of all its property to a foreign corporation organized by the directors of the former for the purpose of receiving its property, the scheme being to have its stockholders sell to or exchange their stock with the new company, is not voidable only, but void.
2.  Where, on a bill by stockholders against directors to cancel a transfer of all the corporation property, the directors consent that a decree be entered adjudging their acts, so far as they related to a sale or attempted sale, to be null and void, and that the deed be declared "null and canceled," they cannot complain of a decree declaring the deed "null and void" on the ground that it is voidable only.
3.  Minority stockholders, who successfully brought a suit in equity against the directors to restrain and cancel an attempted transfer of the entire

property of the corporation to a foreign corporation organized by the defendant directors for the purpose, were entitled to an allowance for attorney's fees.

4. Such fees were properly allowed by the court as a part of plaintiffs' costs and expenses, taxable according to the course and practice of courts of equity, and were not recoverable only in an action at law as money paid out for the benefit of the derelict corporation, or to be allowed only as part of the .expense of administering through the receiver the trust fund in the hands of the court of equity.

5. That such mode of making the allowance deprives the defendant of a jury trial of the issue as to the amount does not render the mode illegal.

6. That the decree declaring the 'transfer null and void and allowing the attorney's fee contained a provision for an accounting by the foreign corporation did not render the allowance of the attorney's fee premature, as the reservation for an accounting did not make the judgment less a final decree under Code of Civil Procedure, Section 1000, defining a judgment as the final determination of the rights of the parties, and Section 1820, denominating every direction of court or judge made in writing, and not included in a judgment, an order.

7. The decree of a court of equity allowing an attorney's fee on conflicting evidence and supported by credible testimony will not be disturbed on appeal.

8. On appeal from a decree allowing an attorney's fee, the presumption, in the absence of a contrary showing, is that the court followed the established rule and considered the amount and character of the services rendered, the labor, time and trouble involved, the character and importance of the litigation in which the services were rendered, the amount of money or the value of the property to be affected, the professional skill and experience called for, the character and standing in their profession of the attorneys, and the result secured.

9. On the successful termination of a suit by minority stockholders to restrain and cancel a transfer of all the property of the corporation, the value of all such property, and not merely the value of the stock held by plaintiffs, is to be considered in determining the amount of attorney's fee allowable to plaintiffs.

10. It was proper to take into consideration the services of the attorneys in special proceedings in which the trial court was a nominal party to writs of review and prohibition to prevent the execution of orders in the main proceeding.

11. Services in unsuccessful intermediate orders and appeals might be considered.

12. The latitude of cross-examination rests largely in the discretion of the trial court, and is not to be interfered with save for abuse.

13. An appellant cannot avail himself of an exception taken on trial by the adverse party.

14. A party will not be heard to complain of a judgment entered by his consent.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

BILL by James Forrester and John MacGinniss against the Boston & Montana Consolidated Copper & Silver Mining Company of Montana and others, to restrain and cancel a transfer of all the stock of defendant corporation. From a decree declaring the transfer null and void, and from an order granting

the plaintiffs attorney's fees, defendants appeal. Judgment affirmed; and the appeal from the order dismissed.

*Messrs. Forbis & Evans, Mr. W. W. Dixon,* and *Mr. Ransom Cooper,* for Appellants.

*Mr. John J. McHatton, Mr. Charles R. Leonard, Messrs. Cullen, Day & Cullen,* and *Mr. Robert B. Smith,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced June 4, 1898, by Forrester and MacGinniss, plaintiffs, against the Boston & Montana Consolidated Copper & Silver Mining Company of Montana, the Boston & Montana Consolidated Copper & Silver Mining Company of New York, the board of directors of the Montana Company, and certain stockholders and holders of proxies, to restrain the transfer of the property of the Montana Company to the New York Company, to secure the appointment of a receiver for the Montana Company, and for other relief. A full statement of the facts in this case is contained in the opinion heretofore rendered by this court (*Forrester et al.* v. *Boston & Montana C. C. & S. M. Co.,* 21 Mont. 544, 55 Pac. 229, 353), to which reference is made. A temporary injunction was issued, and afterwards a receiver appointed. After the appeal from the order granting the injunction had been decided against the defendants, and they had made numerous unsuccessful attempts to prevent the property falling into the hands of the receiver, on April 9, 1899, they filed in the district court their written consent that a decree might be entered enjoining the transfer of the property of the Montana Company to the New York Company, enjoining the voting of the stock in favor of any such transfer, enjoining the New York Company from operating the property in any manner, and requiring that company to redeliver to the Montana Company the possession of the property in controversy, and adjudging the acts of the directors

and officers of the Montana Company, so far as they related to a sale or attempted sale of the property to the New York Company, to be null and void, and requiring the New York Company to execute proper conveyances of the property to the Montana Company, requiring the New York Company to account for the property while in its possession, and providing that plaintiffs might recover their costs. This offer was declined by the plaintiffs, and, a motion for the discharge of the receiver having been made and denied, an appeal was taken to this court. The order denying that motion was reversed (*Forrester & Mac-Ginniss* v. *B. & M. C. C. & S. M. Co.,* 22 Mont. 430, 56 Pac. 868), and the lower court was directed to enter a judgment and decree in conformity with the offer made by the defendants, and thereupon to discharge the receiver. On May 4, 1901, the court entered a judgment and decree containing the provisions stipulated for by the defendants, and further allowing the plaintiffs an attorney fee of $50,000, which is adjudged against the Montana Company. The decree also contains the following provision: "It is further adjudged and decreed that the acts of the directors and officers of the defendant mining company, Boston & Montana Consolidated Copper & Silver Mining Company of Montana, so far as they relate to the sale or conveyance, or the attempt to sell or convey, the property of the said mining company to the New York Company, be, and the same are hereby, declared, adjudged and decreed to have been and to be null and void, and to have conveyed no right or title to the New York Company in or to any of the property of the Montana Company, and that any and all deeds or instruments of conveyance, and particularly the deed of conveyance heretofore given to the said New York Company by the officers and directors of the Montana Company, and executed in its name, for all the property and rights mentioned and described in Exhibit A of the complaint herein, which deed is recorded on page 173 of Book 29 of Deed Records of Silver Bow county, Montana, be, and the same is hereby, declared, adjudged and decreed to have been and to be null and void, and to have conveyed no title or right, and are hereby canceled and set aside; and the said

New York Company is forever enjoined from asserting any claim under said deed or deeds to said property. It is hereby adjudged and decreed that the said defendant, the said New York Company, has no right, title or interest in or to any of the property of the Montana Company heretofore or at any time conveyed or attempted to be conveyed by said Montana Company to said New York Company, and that it never had or acquired any right, title or interest therein." From this judgment and the order allowing attorney's fee the defendants appealed.

1.  Appellants contend that the judgment is unauthorized, particularly with reference to that portion quoted above. The specific objection made is that the judgment decrees the transfer or attempted transfer by the Montana Company to the New York Company to have been null and void, and likewise decrees the deed executed by the officers of the Montana Company to the New York Company to have been null and void, and that it never transferred any right or title to the New York Company. Appellants contend that the court should have gone no further than to declare such acts voidable.

If the transfer or attempted transfer by the Montana Company to the New York Company and the deed evidencing that transfer were in fact null and void, then they conveyed no right or title to the New York Company. A void transfer is, in effect, no transfer. A void deed is, in effect, no deed. Such a deed is a nullity *ab initio.* However, discussion of the question is foreclosed by the offer of appellants and the former decision of this court (*Forrester et al.* v. *Boston & Montana C. C. & S. M. Co.,* 21 Mont. 544, 55 Pac. 229, 353, above), where this cause was fully considered. In disposing of it this court said: "Holding, as we do, that the proposed transfer is *ultra vires* the corporation, and therefore void, consideration of the question whether the transaction would, if accomplished, result in a consolidation or merger of the Montana Company with the New York Company, is unnecessary." And this view finds support in the following authorities: *McShane* v. *Carter,* 80 Cal. 310, 22

Pac. 178; *Pekin Mining, etc. Co.* v. *Kennedy,* 81 Cal. 356, 22 Pac. 679; *McCutcheon* v. *Merz Capsule Co.,* 71 Fed. 787, 19 C. C. A. 108, 31 L. R. A. 415; *Central Transportation Co.* v. *Pullman's Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; *Jacksonville M. P. Ry. & Nav. Co.* v. *Hooper,* 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; *California Bank* v. *Kennedy,* 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198.

It is true that in *Boston & Montana C. C. & S. M. Co.* v. *M. O. P. Co.* (C. C.), 89 Fed. 529, Judge De Haven held that the attempted transfer by the Montana Company to the New York Company was only voidable, and not void; but we think that decision is in conflict with the great weight of authority, and we prefer to follow the former decision of our own court.

As stated above, the appellants made an offer in writing that judgment might be entered in favor of Forrester and MacGinniss, and this court directed the trial court to enter judgment in conformity with the same. Upon this particular question the appellants' offer contains these provisions, which they proposed should be incorporated in the judgment, viz.: "Also adjudging that the acts of the directors and officers of the Montana Company, so far as relate to the sale or conveyance, or the attempt to sell or convey, the property of the said Montana Company to the said New York Company, be declared null and void, and that the deed of conveyance heretofore given to the said New York Company by the officers and directors of the said Montana Company, and executed in its name, for all the property and rights mentioned or described in Exhibit A of the complaint herein, which deed is recorded on page 175 of Book No. 29 of Deeds Records of Silver Bow county, Montana, be declared null and canceled; and that the said New York Company be forever enjoined from asserting any claim under said deed to said property; also that said New York Company be declared to have no right, title or interest in or to any of the property of the Montana Company heretofore at any time conveyed or attempted to be conveyed by said Montana Company to said New York Company."

The terms "null" and "void" are used interchangeably, and are defined as follows: Null: "Of no legal force or effect; void; as, our agreement is null." Standard Dictionary. Void: "Having no legal force; entirely null; incapable of confirmation or ratification." *Id.* Null: "Of no legal or binding force or validity; of no efficacy; invalid; void; nugatory; useless; of no account or significance." Webster's Dictionary. Void: "Of no legal force or effect whatsoever; null, and incapable of confirmation or ratification." *Id.* Null: "Void; of no legal or binding force or validity; of no efficacy; invalid." Century Dictionary. Void: "Specifically, in law, without legal efficacy; incapable of being enforced by law; having no legal or binding force; null; not effectual to bind parties, or to convey or support a right." *Id.*

We are unable to perceive the difference, in legal effect, between the offer and the decree, and are of the opinion that in this regard the lower court followed the directions given by this court, and that as to this portion of the judgment it was entered by consent, and appellants will not be heard to complain of it.

2. The receiver had been dispossessed of the property and restitution thereof to the Montana Company had been made by an order of this court dated April 13, 1899 (*Forrester & MacGinniss* v. *Boston & Montana C. C. & S. M. Co.,* 22 Mont. 430, 56 Pac. 868), long prior to the date of the rendition of the judgment by the lower court in which is included the allowance for attorney's fees, and appellants contend that such allowance was improperly made, first, because plaintiffs have not brought themselves within the rule which permits the recovery of an attorney fee by a minority stockholder who prosecutes a suit of this character; and, second, because there was no fund in the hands of the court out of which such fee could be paid at the time it was allowed.

Upon the first proposition it is sufficient to say that the officers and trustees of the Montana Company had assumed to transfer the entire property of the corporation to the New York Company. These plaintiffs

were minority stockholders in the Montana Company, but were not stockholders in the New York Company, and against their wishes, could not be compelled to become such. The offer of the defendants to confess judgment was an admission of wrongdoing on their part in so far as the transfer or attempted transfer was concerned, and this court, on appeal from the order granting an injunction (21 Mont. 544, 55 Pac. 229, 353, *supra*), declared such attempted transfer *ultra vires* and void. Under such circumstances the authorities are unanimous in holding that the minority stockholder or stockholders dissatisfied with such action may institute a suit in equity to prevent the transfer or to recover back the corporate property.

Having determined that plaintiffs could maintain the action, the next inquiry is, were they successful? and this question is answered in the affirmative by the offer of defendants to permit judgment to be entered, and the entry of judgment accordingly; and the doctrine is settled beyond controversy that under such circumstances the prevailing minority stockholders may recover their attorney fee. This brings us to a consideration of a much more difficult question, viz., how shall such fee be recovered? Obviously, it is permitted upon one of two theories: First, that the fee is a part of plaintiffs' costs taxable according to the course and practice of courts of equity, and included in the final decree; or, second, that it is money paid out and expended for the use and benefit of the derelict corporation, and recoverable in an action at law. Numerous cases are cited by counsel of these suits successfully waged by minority stockholders, where an attorney fee has been allowed to the plaintiffs; but in most, if not every, instance a receiver had been appointed, and the property was in the actual custody and control of the court. The amount to be allowed as such fee was determined by a reference to a master, and when the amount was reported it was included in the final decree, and directed to be paid out of the property recovered or protected by the suit. The mere fact that these courts say that it is proper to make such payment out of the trust fund throws little, if any, light upon

the question in dispute here. These decisions are useful only as precedents, for, after all, they do not determine the manner of recovery of such fee where no receiver has been appointed, or, as in this instance, where the property has been taken from the possession of the receiver before final decree has been entered, or before the amount of such fee has been determined.

We are not impressed with the suggestion that such fee is allowed as a part of the expense of administering the trust fund in the hands of the court, for that can refer only to the administration by the court through the receiver, and costs of such administration are costs and expenses incident to such receivership only, while there is no relation whatever between the rights or liabilities of the plaintiffs to the action and the receiver. He is supposed to remain neutral while the litigation is being waged by the contending parties.

*Wickersham* v. *Crittenden,* 103 Cal. 583, 37 Pac. 513, cited by appellants, is not decisive of any question involved in this action. In that case Wickersham, who was a minority stockholder in the San Luis Obispo Bank, instituted two suits against Crittenden, the bank and others, to recover for the bank certain funds. The actions were successful, and the judgment in each instance recited that the recovery was for the use of the bank. Upon appeal each of the judgments was affirmed. Afterwards Wickersham sought, by motion, to have his attorney fee paid to him out of the money recovered, notwithstanding he had not had it allowed and included in the judgments. The lower court made an order to that effect, but on appeal the order was reversed. The court said: "The judgments as rendered in the superior court were affirmed in this court, and were, of course, final judgments, and they did not include attorneys' fees. They directed the moneys recovered, together with the stated costs, to be paid to the bank; and the superior court could not, upon petition or motion, change or modify these final judgments by ordering the moneys recovered to be disposed of in any way other than provided in the judgments themselves."

In *Grant* v. *Lookout Mountain Co.,* 93 Tenn. 691, 28 S. W.

90, 27 L. R. A. 98, certain phases of this question were involved. That action was brought by Grant and other minority stockholders against the corporation (Lookout Mountain Company) to restrain a sale of all the property of the company to one Baxter. The purpose of the sale was alleged to be to effect a consolidation of the Lookout Mountain Company and two insolvent corporations, in which the majority stockholders in the Lookout Mountain Company were also majority stockholders. The action was successful, and a decree was ordered, setting aside the pretended transfer to Baxter, and completely recovering the property to the Lookout Mountain Company. The successful minority stockholders then moved the court to refer to a master the question of the amount which they should recover as attorney fee. This application was refused, and an appeal taken. The opinion is lengthy, and reviews the decisions upon the question of the propriety of allowing an attorney fee in such a case, and concludes as follows: "We are therefore of opinion that this record shows that through the intervention of these minority stockholders the property of the corporation has been preserved, protected and, indeed, recovered after it had been illegally conveyed away, and that, such recovery inuring to the benefit of the corporation, the suit was, to all intents and purposes, the suit of the corporation itself. The Lookout Mountain Company is therefore responsible for proper and reasonable counsel fees incurred by complainants in the prosecution of the suit.   *   *   *   The decree of the chancellor is reversed, and the case remanded for a reference in accordance with the motions submitted by the complainants and their counsel in the court below." It is to be observed in this case that the Supreme Court of Tennessee does not treat the attorney fee as a charge against the trust fund, payable only on condition that such fund is still under the control of the trial court, but holds that the derelict defendant corporation is directly liable for it, and orders that the amount of such fee be determined by the chancellor by a reference to a master. The amount of the fee in the case at bar was reached in the same manner,

except that the chancellor heard the testimony, instead of referring the matter, as he might have done. We are not treating the decision just referred to as decisive of this case, but only as a precedent indicating the practice in courts of equity generally.

We can see no reason why the power of the court to allow an attorney fee should be made to depend upon the mere possession of the trust fund. The most forceful objection to the manner of allowing the fee in this case is that it deprives the defendants of a jury trial of the issue as to the amount to be allowed as such fee, but this objection could be urged with equal propriety in every case where such a fee is allowed out of the trust fund. The allowance of such fee and the determination of the amount by the chancellor have become the settled practice in courts of equity. If such fee was recoverable only as for money paid out for the use and benefit of the defendant corporation, we are unable to understand how it could be allowed out of the corporate property by the chancellor. The action to recover money paid to the use of another is an action in *assumpsit*—an action at law. The very fact of the allowance of such a fee and the determination of the amount thereof by the chancellor incline us to the belief that it has never been considered money paid out for the use of the defendant corporation, but costs incident to the suit; and this belief is strengthened by the further fact that in every instance the right to recovery is made to depend upon the success of the minority stockholder's suit. If he is successful, he is entitled to recover his attorney fee; if he is unsuccessful, he is not entitled to recover it. If the fee was recoverable as for money paid out for the use of the defendant corporation, the success or failure of the litigation in which it was expended would have little to do with the right to its recovery.

Impelled by these considerations we are of the opinion that the attorney fee was properly allowed by the court as a part of plaintiffs' costs and expenses, taxable according to the course and practice of courts of equity. In this view of the case, the

order allowing such fee is not appealable, but is reviewed on the appeal from the judgment itself.

3. It is further claimed on behalf of the appellants that the allowance for attorney fee was prematurely made, for the reason that the judgment in which it is included is not a final judgment. This contention is predicated upon the provision for an accounting to be made by the New York Company to the Montana Company. We do not think that this reservation of itself changes the character of the judgment. It is either a final judgment or no judgment. Section 1000 of the Code of Civil Procedure reads as follows: "Sec. 1000. A judgment is the final determination of the rights of the parties in an action or proceeding." Section 1820 of the same Code reads: "Sec. 1820. Every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order." In *In re Rose's Estate,* 80 Cal. 166, 22 Pac. 86, the court considered provisions of the California Code identical with Sections 1000 and 1820, above, and reached the conclusion that there is no distinction between a judgment and a final judgment, and that every direction of a court in writing must fall within the definition of the term "judgment or order." Furthermore, to agree with appellants' contention would be to defeat their appeal altogether, for, if this is not a final judgment, there is no appeal from it, and their appeal would have to be dismissed. However, under the definitions given above, we are of the opinion that the judgment entered in this cause is a final judgment.

4. It is earnestly contended that the fee allowed by the district court is excessive. It is not, however, insisted that the decision of the court is not supported by the testimony. On the contrary, the record shows that Hon. T. C. Bach, some time associate justice of the Supreme Court of the Territory of Montana, O. F. Goddard, of Billings, and G. W. Stapleton, of Butte, eminent members of the profession in this state, and attorneys of many years of experience, each testified that, in his opinion, the services rendered by the attorneys for the plaintiffs were

reasonably worth the sum of $50,000, the amount allowed by the court. It is likewise true that other attorneys of wide experience and of high standing in the profession testified on behalf of the defendants that a much less amount would constitute reasonable compensation for the services. The amount to be allowed, however, was a matter for the trial court to determine in the first instance from all the facts and circumstances in evidence. (3 Ency. Law, 423.) There was a conflict in the testimony, and the determination of the trial court, being supported by evidence which it deemed credible, will not be disturbed on appeal.

The authorities are unanimous in holding that the plaintiffs are entitled to recover a reasonable attorney fee, and for the purpose of determining the amount of such fee the following rule has been laid down: "The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered, the labor, time and trouble involved, the character and importance of the litigation in which the services were rendered, the amount of money or the value of the property to be affected, the professional skill and experience called for, the character and standing in their profession of the attorneys. \* \* \* The result secured by the services of the attorneys may be considered as an important element in determining their value." (3 Ency. Law, 420; 4 Cyc. 994.) In the absence of any showing to the contrary, the presumption must be indulged that the trial court followed this well-established rule.

The record discloses that five firms of attorneys, namely, McHatton & Cotter, Clayberg & Corbett, Cullen, Day & Cullen, Robert B. Smith, and Charles R. Leonard, were employed by, and participated in the litigation on behalf of, the plaintiffs. John J. McHatton, one of the attorneys for plaintiffs, testified to the work done by the several firms in the litigation (various phases of which litigation have been before this court—*Forrester et al.* v. *Boston & Montana C. C. & S. M. Co.,* 21 Mont. 544, 565, 55 Pac. 229, 353; *State ex rel. Boston & Montana C. C.*

& S. M. Co. v. Dist. Court, 22 Mont. 220, 56 Pac. 219; State ex rel. Boston & Montana C. C. & S. M. Co. v. Dist. Court, 22 Mont. 241, 56 Pac. 281; State ex rel. Boston & Montana C. C. & S. M. Co. v. Dist. Court, 22 Mont. 376, 56 Pac. 687; State ex rel. Boston & Montana C. C. & S. M. Co. v. Dist. Court, 22 Mont. 438, 56 Pac. 865; Forrester & MacGinniss v. Boston & Montana C. C. & S. M. Co., 22 Mont. 430, 56 Pac. 868; Forrester v. B. & M. C. C. & S. M. Co., 23 Mont. 122, 58 Pac. 40; Forrester & MacGinniss v. Boston & Montana C. C. & S. M. Co., 24 Mont. 148, 60 Pac. 1088), and upon this testimony as a basis the witnesses expressed their opinions as to the reasonable value of such services. The witness McHatton testified that the property in controversy—that is, the entire property of the Montana Company—was of the value of about $40,000,-000. It appears from the record that these plaintiffs owned 200 shares of the capital stock of the Montana Company, worth $53,000, based upon the market quotations of the stock, and appellants insist that the value of the property to be affected (referred to in the rule laid down above) in this instance was the property of the plaintiffs, and that it is ridiculous to allow $50,000 attorney fees in an action involving only $53,000 worth of property. Respondents contend that the property to be affected, within the meaning of that rule, was the entire property of the Montana Company, and that in estimating the value of the services rendered by counsel for plaintiffs the witnesses properly took into consideration property of the value of $40,-000,000. What property was involved in the litigation is to be determined by a consideration of the nature and purpose of the action. If the action is by minority stockholders to protect their property rights only, then doubtless appellants' contention is correct. But the courts do not so treat it. In Grant v. Lookout Mountain Co., above, it is said: "Wherever a cause of action exists primarily in behalf of the corporation against directors, officers and others for wrongful dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and

in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders. * * * The *rationale* of this rule should not be misapprehended. The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his,* or because *he* is entitled to the relief sought. He is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.* The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation. It is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder plaintiff." (*Trustees* v. *Greenough,* 105 U. S. 527, 26 L. Ed. 1157; 4 Thompson on Corporations, 4491, 4560; 2 Cook on Stockholders, 748.)

If the doctrine above announced is correct—and we think it is—the purpose of the action, then, is to recover back the trust fund, or all of the property of the corporation which is about to be dissipated, and in the present instance it was the entire property of the Montana Company, valued at about $40,000,-000; and such value was properly considered in determining the attorney fees to be allowed the plaintiffs for the successful prosecution of the action, which ought to have been brought by the corporation itself, had not its officers and trustees breached their trust.

Neither do we think there is any merit in appellants' contention that the expert witnesses were improperly permitted to take into consideration services rendered in certain special proceedings instituted in this court, and in which the lower court was nominally a party defendant or respondent. One object of this action was to have a receiver appointed to take charge of the property of the Montana Company pending the litigation. The action of the district court in making this appointment was

affirmed by this court.   (*State ex rel. Boston & Montana C. C. & S. M. Co.* v. *Dist. Court,* 22 Mont. 241, 56 Pac. 281.)   The writs of review and prohibition sued out of this court were intended to prevent the execution of the order appointing the receiver, and were merely incidental to the main action itself. The same reason applies to the other services to which objection is made.

Appellants further contend that it was error to include attorneys' services which were unsuccessful, and reference is made to certain motions and the appeal from the order of the lower court refusing to discharge the receiver, which were unsuccessfully opposed by the plaintiffs.   We understand the rule in suits of this character instituted by minority stockholders to be that, if the action is successful, the plaintiffs may recover their attorney fees; if unsuccessful, they may not.   But the rule applies to the ultimate object to be attained, and not to every step which may be taken in the course of the litigation.   If in the end the plaintiffs accomplished the purpose for which the suit was instituted, their efforts were successful, however many intermediate orders or rulings may have been made against them.

5.   It is finally contended that the court erred in sustaining certain objections interposed to questions asked plaintiffs' witnesses on cross-examination.   The following will illustrate the alleged errors:   "(8) The court erred in sustaining objection to the question asked witness McHatton, as follows:   'Do you know of any such fee as fifty thousand dollars ever having been paid in the state of Montana to any attorney?'"   "(11) The court erred in sustaining the objection to the question asked witness Bach, as follows:   'I will ask you if, in representing that corporation (the M. O. P. Co.), you can tell us what your salary is per year?   A. I am not a clerk, sir; and I have no salary.   I have a retainer.   Q. I will ask you, then, what your retainer is per year?'"   "(13) The court erred in sustaining objection to the question asked the witness Goddard, as follows: 'Q. Did you ever receive such a fee as fifty thousand dollars?'"   "(17) The court erred in sustaining the objection to the ques-

tion asked the witness Stapleton, as follows: 'Did you ever receive such a fee as fifty thousand dollars under any circumstances?' " "(19) The court erred in sustaining the objection to the question asked the witness Stapleton, as follows: 'Q. I will ask you what compensation you received for your services in connection with the Boston & Montana Company?' "

With reference to the questions asked the witness McHatton, it is sufficient to say that on his direct examination he did not testify with reference to the value of the services rendered, and therefore could not be cross-examined respecting the same.

The opportunity to cross-examine the opposing party's witnesses is a matter of right; but the latitude of cross-examination is very largely in the discretion of the trial court, and an appellate tribunal will not interfere unless that discretion is oppressively abused. (8 Enc. Pleading & Practice, 109, and numerous cases cited.) The record discloses that reasonable latitude was allowed in the cross-examination of these witnesses, and in excluding answers to the foregoing questions we are not prepared to say that such an abuse of the trial court's discretion is shown as would warrant interference by this tribunal, if the examination was otherwise proper. It has been said that evidence of what another attorney received in the same case, or in other particular cases, is not admissible in determining the value of services performed. (3 Enc. Law, 424.) We are not prepared to say that the line of examination indicated by the questions above quoted was proper cross-examination, or that answers thereto would have thrown any light upon the question at issue or upon the qualification of the witnesses testifying. Certainly, under the showing made by the record in the action, no such abuse of discretion is shown as would warrant a reversal of the judgment.

One question directed to the witness Goddard might properly have been answered, and error is predicated by appellants upon the ruling of the court, as follows: "(12) The court erred in sustaining objection to the question asked witness Goddard, as follows: 'Q. Mr. Goddard, I will ask you if you know

of any case wherein any number of attorneys in that particular case have received as compensation a fee of fifty thousand dollars?'" The question was apparently framed to make out a case parallel with the one at bar. The record, however, discloses these recitals immediately following that question: "Objected to as immaterial, irrelevant and incompetent. Objection overruled, and plaintiffs allowed an exception." It is apparent, then, that the ruling is in appellants' favor, and that the exception was taken by the plaintiffs, and cannot be availed of by the appellants on this appeal. We do not understand that a party may complain of a ruling in his own favor.

A careful review of the case leads us to the conclusion that no error prejudicial to the appellants was committed.

The appeal from the order allowing the attorney fee is dismissed, and the judgment is affirmed.

*Affirmed.*

MR. JUSTICE MILBURN having been absent, owing to illness, did not hear the argument, and takes no part in this decision.

## ON MOTION FOR REHEARING.

### (Decided April 12, 1904.)

MR. JUSTICE HOLLOWAY: In support of their motion for a rehearing, appellants direct our attention to an inaccuracy in out statement of their contention. The mistake occurs in paragraph 3 of the opinion heretofore rendered wherein we say that appellants contend that the allowance for attorneys' fee was premaurely made, for the reason that the judgment in which it is included is not *a* final judgment, while appellants' contention actually was that such judgment was not *the* final judgment in the case, or, in other words, that the judgment entered did not finally dispose of the suit, for the reason that the accounting had not been had. It is, however, fairly deducible from the pleadings that the accounting was only an incident to the main purpose to be accomplished by the suit, namely, to

prevent the consummation of the transfer of the property of the Montana Company to the New York Company, and to that extent the action was successful, and the plaintiffs entitled to their attorney fee. The decree disposed of the issues involved, and left nothing but the actual accounting to be taken, and we are of the opinion that this of itself is not sufficient to necessitate a delay until it is done before the plaintiffs may recover the attorney fee due them for prosecuting to a successful issue the principal action, in which the accounting was but an incident.

The motion for a rehearing is denied.

*Denied.*

MR. CHIEF JUSTICE BRANTLY concurs. MR. JUSTICE MILBURN, not having participated in the hearing of this appeal in the first instance, owing to illness, takes no part in this decision.