## EASUN v. BUCKEYE BREWING Co. et al.

*(Circuit Court, N. D. Ohio, W. D.　July 21, 1892.)*

CORPORATIONS—CONTRACTS—ULTRA VIRES.

　　A contract by a corporation created under the laws of Ohio, while solvent and engaged in a profitable business, to sell its plant and assets for a consideration, the greater part of which is stock and bonds of another corporation to be organized to carry on the business, no exigency making such sale necessary for the protection of stockholders, is *ultra vires*, as, under the state laws, one corporation cannot become the owner of stock in another unless authority to do so is clearly conferred by statute.

At Law. Action by Harry William Easun against the Buckeye Brewing Company and others. On demurrer to petition. Demurrer sustained.

*Hurd & Scribner* and *E. W. Tollerton*, for plaintiff.

*R. Waite* and *Doyle, Scott & Lewis*, for defendants.

Before TAFT, Circuit Judge, and RICKS, District Judge.

RICKS, District Judge. This is an action instituted by the plaintiff to recover $250,000 damages for the failure of the defendants to comply with the provisions of a contract for the sale of the defendants' property to the plaintiff, which contract was made between the parties on the 27th

day of July, 1891. By the provisions of this contract of sale, the vendor, the Buckeye Brewing Company, obligated itself to sell to the vendee certain brewing property in the city of Toledo, known as the "Buckeye Brewing Company." The purchaser, on his part, as a consideration for said sale, agreed to pay the vendor the sum of $860,000, whereof "the sum of $10,000 shall be paid in cash by way of deposit; the further sum of $334,000 shall be paid in cash on or before the completion of the purchase; the further sum of $258,000 by issue to the vendors, or as they may appoint, of six per cent. debenture bonds of an English joint-stock company, proposed to be formed by the purchaser, hereinafter referred to as the 'Company,' provided the total amount of such debenture bonds shall not exceed ninety thousand pounds; and the balance of $258,000 by the allotment to the vendors of ordinary shares of the Company of that equivalent, nominal value, such shares to be deemed fully paid." The contract further provided that the vendor should deposit muniments of its title with the Second National Bank of Toledo, and that Dennis Coghlin and George E. Pomeroy, officers of the Buckeye Brewing Company, were to render certain services to the vendee, or its successor, after the completion of the sale. The petition avers that the defendant the Buckeye Brewing Company failed to deposit its muniments of title, and that Dennis Coghlin and George E. Pomeroy by written instruments notified the plaintiff that they would not render the service provided for in said contract to the vendee; and by reason of such breaches of contract the sale was not completed, to the damage of the plaintiff in the sum above stated. Demurrers were interposed by the defendants Coghlin, Kountz, Pomeroy, Jacobi, and William Coghlin, which it is admitted were well taken, and may therefore be sustained.

The case stands, then, upon the demurrer of the defendant the Buckeye Brewing Company to the petition. Several grounds are set forth in argument why the demurrer should be sustained: *First.* That the case was prematurely brought. *Second.* That the only allegations of performance by the plaintiff are the general allegations that "from the aforesaid date of the execution of said agreement he has in all respects performed each and every condition of the contract on his part to be performed," while in a later part of the petition he was prevented, as he says, from performing. *Third.* That the only allegations of breach of contract by the Buckeye Brewing Company are (*a*) that it failed to deposit the muniments of title of the brewing company with the bank, to be held to the joint order of the plaintiff and the defendant, and the only injury alleged by the plaintiff because of said failure is that thereby " he has been, and is now, unable to ascertain whether or not the said defendant brewing company has a good and perfect title to the property; " (*b*) that Dennis Coghlin refuses to have any connection with the English company proposed to be organized for the management of the brewery. *Fourth.* That the contract sued upon, as made by the Buckeye Brewing Company, was *ultra vires.*

In the view which we take of this case, it is only necessary to consider the question of whether or not this contract sued upon was *ultra vires.*

It is well settled in Ohio that corporations have such powers, and such only, as the act creating them confers; and are confined to the exercise of those expressly granted, and such incidental powers as are necessary to carry into effect those specifically conferred. Under this construction of the statute, it was clearly settled in the case of *Franklin Bank* v. *Commercial Bank*, 36 Ohio St. 350, that one corporation cannot become the owner of any portion of the capital stock of another corporation, unless authority to become such is clearly conferred by the statute. The provisions of this contract clearly contemplated that the Buckeye Brewing Company, which, so far as the pleadings before us show, was, at the time of making such contract, not only a solvent corporation, but a prosperous and profitable one, should sell and dispose of its plant and all its assets, and a very large part of the consideration for such sale was to be stock and bonds in an English corporation to be organized to carry on the business of the vendee. The provisions of the contract specified as to the rate of interest such bonds should carry, and the dividend such stock should pay. By implication it is fair to infer that it was contemplated that the Buckeye Brewing Company, as a corporation, should continue, for the purpose of collecting the interest on these debenture bonds, the dividends on the stock of the new corporation, and to distribute the same among the shareholders of said Buckeye Brewing Company. It was therefore to continue its business as a corporation, not for the purpose of carrying out the objects for which it was organized, viz., the business of a brewing company, but for the purpose of owning stock in a new corporation, and to the extent that ownership of such stock involved participating in the management of that corporation it was to assist in carrying on the business of another corporation. There was no such exigency in the business of this corporation as to make such sale of its property and change in the nature of its corporate business necessary for the protection of its stockholders. Counsel for the plaintiff have cited many cases in which the courts of several of the states, under statutes very similar to those of Ohio, have held that corporations had a right to own and control the stock of other corporations, but in every such case to which our attention has been called such power was conceded to the corporation as incident to its inherent right to protect its shareholders from loss, owing to some peculiar exigency in the affairs of the corporation. An insolvent corporation, contemplating voluntary dissolution by consent of its shareholders, might have a right to dispose of its property, and accept, in whole or in part, for the purchase price thereof, stock in another corporation; this stock to be either sold, and the proceeds thereof distributed to the creditors, or to be apportioned in kind to such creditors or stockholders as the terms of dissolution might provide. A receiver appointed to manage the affairs of an insolvent corporation and to close out its business might be authorized to dispose of its assets, and receive in payment therefor stock in the corporation, to be disposed of as the court might order in the distribution of its assets. But in all these cases there must be some stringency or emergency to justify this departure from the ordinary course of the business of the

corporation. But in this case no such emergency existed. As before stated, the corporation was doing a flourishing business. Its plant and good will and business were considered so desirable that the vendee agreed to pay therefor the large consideration specified in the contract. This sale could undoubtedly have been made for cash and deferred payments. The purchase price might not have been so great upon such a basis, but still would have been adequate. As no emergency existed to compel this sale, and the transaction was purely voluntary on the part of the corporation, there is no reason why it should be permitted to violate the well-settled principles of law by taking stock in a new corporation, and thereby enhancing the consideration which it was to receive. Public policy discourages such transactions. As the supreme court of Ohio has well said, in the case in 36 Ohio St., above referred to:

"Were this not so, one corporation, by buying up the majority of the shares of the stock of another, could take the entire management of its business, however foreign such business might be to that which the corporation so purchasing said shares was created to carry on. A banking corporation could become the operator of a railroad, or carry on the business of manufacturing, and any other corporation could engage in banking by obtaining control of the bank's stock. Nor would this result follow any the less certainly if the shares of stock were received in pledge only to secure the payment of a debt, provided the shares were transferred on the books to the name of the pledgee. A person in whose name the stock of the corporation stands on the books of the corporation is, as to the corporation, a stockholder, and has the right to vote upon the stock."

All these objections apply with full force to the transactions under consideration before us. There is no reason why there should be a departure from these well-settled rules in this case. There are no creditors whose interests are to be protected by upholding this sale. There are no unfortunate shareholders who are liable to be assessed for unpaid debts under the statutes of the state. There was, in fact, no emergency to justify any such unauthorized transactions on the part of the Buckeye Brewing Company. The plaintiff does not sustain such a relation to this contract as entitles him to any exemption from the application of these principles of law. He must be held to have dealt with this corporation with knowledge of its corporate powers. They were such as was conferred by the laws of Ohio, of which he had the same notice as the defendant and all persons dealing with it. The want of power on the part of defendant to make such a contract prevents the plaintiff from either enforcing it in an action for specific performance or recovering damages for its breach. *Coppin* v. *Greenlees & Ransom Co.*, 38 Ohio St. 275. For the reason stated we think the contract *ultra vires*. It cannot, therefore, be enforced, and this proceeding must fail. The other grounds insisted upon in the demurrer it will not be necessary to notice. The demurrer must be sustained, and the petition dismissed.