**BARRY et al. v. INTERSTATE REFINERIES, Inc., et al. (HART et al., Interveners).**

(District Court, W. D. Missouri, W. D. May 13, 1926.)

**1. Corporations ☞439.**

Transfer by one corporation of practically all its assets to corporation of another state, in consideration of stock, *held* in excess of its power and fraudulent.

**2. Corporations ☞370(3).**

Corporation has only such power as is conferred on it by sovereignty under which it was organized.

**3. Corporations ☞439.**

Going corporation has no implied power to dispose of its assets to another corporation for stock, except there be intent to wind up affairs and distribute assets.

**4. Corporations ☞439.**

In absence of express authorization corporation cannot transfer its property to another corporation for purpose of enabling transferee to exercise its powers and control its affairs.

**5. Corporations ☞542(1).**

Disposal of assets by Delaware corporation to Virginia corporation having same name, and continuance of corporate business so as to give public and those dealing with corporation no information as to change, *held* to operate as fraud in law.

**6. Corporations ☞542(1).**

Transactions involving transfer of assets of Delaware corporation to Virginia corporation of same name and issuing bonds of Virginia corporation secured by mortgage on assets *held* fraudulent.

**7. Corporations ☞542(1).**

Where transfer of its assets of Delaware corporation to Virginia corporation was invalid and fraudulent, mortgage given by Virginia corporation to secure its bonds had no legal force or effect.

**8. Equity 62—Equity must follow the law and lien cannot be declared against Virginia corporation, to which Delaware corporation doing business within Missouri had transferred practically all its assets (Rev. St. Mo. 1919, § 9790).**

Under Rev. St. Mo. 1919, § 9790, prohibiting corporation incumbering its property within state to exclusion of creditors, and since equity must follow the law, a lien cannot be declared against Virginia corporation, to whom Delaware corporation doing business within Missouri had fraudulently transferred practically all its assets.

**9. Equity ☞54—Equity must act specifically and lien cannot be enforced on specific property, in favor of persons furnishing money to corporation for acquisition of certain property on agreement for loan on all of corporation's assets, where other funds were also employed in acquisition of property and they could not be separated and marshaled.**

Where persons furnished money to corporation for acquisition of certain properties, with agreement for loan on all of corporation's assets, and there were other funds also used in acquisition of such properties, a lien cannot be declared in favor of such persons on any specific property, since equity must act specifically and property could not be separated and marshaled.

In Equity. Action by I. N. Barry and others against the Interstate Refineries, Inc., and others, wherein Charles M. Hart and others intervene. Decree adverse to interveners.

Cooper & Neel, of Kansas City, Mo., for plaintiffs and interveners R. B. Jones, Commerce Trust Co., Brinton and others.

James M. Johnson, C. O. French, and Donald W. Johnson, all of Kansas City, Mo., for defendants.

Fred S. Hudson, Wilson, Bundschu & Bailey, and C. O. French, all of Kansas City, Mo., for trustees.

Wm. C. Michaels and Ellison A. Neel, both of Kansas City, Mo., for receivers.

James B. Nourse and Edward D. Ellison, both of Kansas City, Mo., for trustee intervener.

Edwards, Kramer & Edwards, of Kansas City, Mo., for intervener Tokheim Oil Tank & Pump Co.

James M. Houston, of Kansas City, Mo., for intervener Kaw Valley Inv. Co.

Robert E. Ahlrin, of Kansas City, Mo., for interveners Maryland Casualty Co. and Phister Ins. Co.

McClintock, Quant & Ferguson, of Kansas City, Mo., for intervener Tidewater Oil Sales Corporation.

McAnany, Alden & Van Cleave and Clyde Taylor, all of Kansas City, Mo., for intervener Kaw Boiler Works.

Solon T. Gilmore and Burr N. Mosman, both of Kansas City, Mo., for intervener Kansas City, Mo.

Hyde & Griffith, of Kansas City, Mo., for interveners Rotary Refining Co. and others.

Watts & McGuire, of Kansas City, Mo., for intervener Eldorado Oil & Gas Co.

Jacobs & Henderson, of Kansas City, Mo., for intervener Petroleum Oils Corporation.

Henry L. Jost, of Kansas City, Mo., for interveners Chas. M. Hart and others.

REEVES, District Judge. This proceeding is upon the intervention of certain bondholders or lien claimants. Primarily, the interveners seek to have enforced a certain mortgage executed by the Interstate Refineries, Inc., of Virginia, and secondarily, if such mortgage be held invalid, then to have enforced as a lien against the same property certain specific claims interposed by them.

The Interstate Refineries, of Delaware, early in January, 1924, was engaged in the business of producing and refining petroleum products and selling oils and gasoline, with its principal place of business in Kansas City. Prior to that date, its officers had become interested in the purchase of certain properties owned and at one time operated by a corporation referred to as the Ranger Refining Company.

In arranging its finances to consummate the purchase of said property, the officers of the corporation agreed with some of the interveners to secure any advancement made by them to the company by a mortgage upon the properties of the Delaware corporation. Upon this assurance, $92,500 in cash was advanced upon notes executed by the Interstate Refineries, Inc., of Delaware. The deal for the Ranger properties was concluded. The acquisition of such property was brought about by the aid of money secured from interveners. However, the funds thus provided by the interveners did not constitute the whole consideration.

Subsequently the officers of the Interstate Refineries, Inc., of Delaware, formed the Interstate Refineries, Inc., of Virginia. This was done on February 12, 1924. The avowed purpose in forming the latter corporation was to do a certain limited and restricted business as an aid to the first-named corporation. However, on February 29, 1924, the Interstate Refineries, Inc., of Delaware, transferred practically all of its assets to the Interstate Refineries, Inc., of Virginia. The former company continued to operate, however, and manage its former assets.

On the 8th day of May, 1924, the Virginia corporation was authorized by its board of directors to issue its bonds in the sum of $250,000, and, as security therefor, to pledge all of its assets acquired from the Delaware company. Shortly thereafter the transfer of February 29, 1924, from the Delaware to the Virginia company was filed for recordation, and immediately thereafter the mortgage of the Virginia company was in like manner placed of record.

The bonds thus authorized were dated May 10, 1924. Bonds in the sum of $32,500 were issued to certain of the interveners to cover cash advances made by them, and for which they held no notes, mortgages, or other obligations of either of the companies. All of the interveners, according to the testimony, made cash purchases of portions of said bond issue. To those interveners who held notes of the Delaware company, aggregating $92,500, there was issued the same amount in bonds for the redemption of such notes.

On the 7th day of August, 1924, the complainants filed their bill in equity, alleging fraud, mismanagement, and insolvency on the part of the defendant corporations, and it was charged, among other things, that the transfer from the Delaware company to the Virginia company was fraudulently conceived and executed, and that bondholders, stockholders, and creditors were prejudiced thereby. The validity of the mortgage was in like manner challenged as being in fraud of creditors and stockholders.

On September 10, 1925, a voluntary petition in bankruptcy was filed by both corporations. There was an adjudication, and the election of trustees, who have appeared and participated in the trial of this intervention. Both trustees challenge the validity of the bond issue, and resist the claim of the interveners that a lien should be decreed on the

assets involved in their favor. Other facts will be stated in the course of this memorandum opinion.

[1] 1. The transfer by the Delaware company to the Virginia company, on February 29, 1924, was in excess of its power, and was both fraudulent in law and in fact. The Delaware company received, as a consideration for the transfer, 139,990 shares of the stock of the Virginia company. This covered all of the issued stock, save 10 shares, which were distributed to certain persons to qualify them as directors. The company was authorized to issue additional shares.

[2, 3] A corporation only has such power as is conferred upon it by the sovereignty under which it is organized. Oregon Railway Co. v. Oregonian Railway Co., 130 U. S. 1, loc. cit. 20, 9 S. Ct. 409, 32 L. Ed. 837; 14a C. J. 246. And a going corporation has not even the implied power to dispose of its assets to another corporation for stock therein, except there be an intention to wind up its affairs and distribute its assets. 14a C. J. 229; Easun v. Buckeye Brewing Co. (C. C.) 51 F. 156; McCutcheon v. Merz Capsule Co., 71 F. 787, loc. cit. 793, 19 C. C. A. 108, 31 L. R. A. 415.

[4] The rule is that, in the absence of an express authorization, a corporation cannot transfer all of its property to another corporation for the purpose of enabling the transferee to exercise its powers and control its affairs. 14a C. J. 541.

[5] Aside from the legal inability of the Delaware corporation thus to dispose of its assets for the considerations mentioned, the similarity of the names and the continuance of the corporate business in such fashion as to give the public, and particularly those dealing with the corporation, no information as to the change, operated as a fraud in law.

Moreover, all of the transactions involved in the transfer reeked with fraud. The whole procedure was secretly carried out. As stated, the conveyance was executed on February 29, 1924. Three days previously thereto title to the Ranger properties had been taken by the Delaware company under such circumstances and as the result of such an understanding between the officers of the Delaware company and creditors of the Delaware company as to give the transaction all the appearance of a fraudulent purpose. The conveyance was withheld from record until a bond issue had been authorized by the directors of the Virginia corporation, and the mortgage to secure such bonds postdated the filing of the instruments of conveyance from the Delaware to the Virginia company only by a day or two.

[6] The professed intentions with respect to the Virginia company were inconsistent with the actual transactions. Neither creditors nor stockholders, although daily and hourly in contact in a business way with the officers of the two companies, had knowledge of the transactions. The evidence as to the fraudulent character of these transactions is all one way. The fact that the Virginia company assumed the liabilities of the Delaware company did not change its fraudulent aspect. The liability of the assets of the corporation to discharge the debts of the Delaware company existed, notwithstanding the specific assumption by the Virginia company.

[7] 2. Having determined that the transfer to the Virginia company was invalid, it would follow that the mortgage by the Virginia corporation, given to secure its bonds, would in like manner have no legal force or effect. In the execution of the mortgage and the issuance of bonds there was no compliance with legal requirements.

Moreover, it is expressly provided by section 9790, R. S. Mo. 1919, that no corporation of another state, territory, or country "doing business in this state, shall be permitted to mortgage, pledge or otherwise encumber its real or personal property situated in this state, to the injury or exclusion of any citizen or corporation of this state who is a creditor of such foreign corporation, and no mortgage by any foreign corporation * * * given to secure any debt created in any other state, shall take effect as against any citizen or corporation of this state, until all of its liabilities due to any person or corporation in this state at the time of recording such mortgage have been paid and extinguished."

[8] The final inquiry, therefore, is to ascertain whether this court, sitting as a chancellor, may rightfully and properly decree a lien in favor of the interveners. This inquiry must be answered in the negative. In the first place, equity must follow the law, and where the statute has expressly forbidden the mortgaging or pledging of the assets of a corporation, as in this case, to the prejudice of local citizens, the chancellor cannot do in equity that which is forbidden in law.

[9] Again, equity must act specifically. Upon the bill of the interveners, and upon the evidence in the case, the chancellor cannot follow any specific property upon which a lien can be decreed and enforced in favor of the interveners. This cannot be done for the

twofold reason that the money provided by the interveners was not the only funds employed in the acquisition of certain properties, and such properties cannot now be separated and marshalled. Furthermore, the agreement was for a mortgage on all the assets, and not alone upon the Ranger property.

The point has not been urged, but at least some of the interveners authorized transactions which involved the dissipation and the wasting of certain assets of the Delaware corporation not within the jurisdiction of this court in this proceeding. Such assets could have been conserved and applied to the benefit of interveners and for the protection of other creditors and stockholders. In view of the foregoing, the interveners have neither a valid mortgage upon, nor an equitable lien against, the assets involved in this proceeding.

The decree of the court must be adverse to their contentions. Other questions raised by the parties need not be noticed, in view of the conclusions reached herein.